# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 11, 2005          Decided January 6, 2006

No. 03-5359

THADDEUS A. FLETCHER,
APPELLANT

v.

EDWARD F. REILLY, JR.,
CHAIRMAN, UNITED STATES PAROLE COMMISSION AND
DENNIS HARRISON, WARDEN, D.C. DEPARTMENT OF
CORRECTIONS, CENTRAL FACILITY,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 01cv02058)

*Timothy P. O'Toole* argued the cause and filed the briefs for appellant. *Catharine F. Easterly* entered an appearance.

*John P. Mannarino*, Assistant U.S. Attorney, argued the cause for appellee Edward F. Reilly, Jr.  With him on the brief were *Kenneth L. Wainstein*, U.S. Attorney, *John R. Fisher*, Assistant U.S. Attorney at the time the brief was filed, and *Robert D. Okun* and *Roy W. McLeese, III*, Assistant U.S. Attorneys.

*Robert J. Spagnoletti*, Attorney General, Office of Attorney General for the District of Columbia*, Edward E. Schwab*, Deputy Attorney General, and *Mary L. Wilson*, Senior Assistant Attorney General, were on the brief of appellee Dennis Harrison.

Before: GINSBURG, *Chief Judge*, ROGERS, *Circuit Judge*, and Edwards,[*] *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*:   The National Capital Revitalization and Self-Government Improvement Act of 1997 transfers responsibility for the imprisonment of all felons convicted under the District of Columbia ("D.C.") Code from the city to the federal government.  The Act also transfers authority over parole and reparole decisions from the District of Columbia Board of Parole ("Board") to the United States Parole Commission ("Commission").  Pursuant to the Act, the Commission promulgated new federal regulations to replace the Board's parole and reparole regulations covering D.C. Code offenders.  The D.C. Board's regulations had been importantly different from the federal parole/reparole regulations, because the Board had placed significant weight on post-incarceration behavior, including rehabilitative accomplishments, in making release determinations.  Taking this difference into account, the new federal regulations adopted by the Commission mirrored the rehabilitative focus of the Board's former regulations covering *parole*.  The Commission, however, did not adopt the Board's regulations covering decisions to grant *reparole* to D.C. Code offenders.

---

[*] Senior Circuit Judge Edwards was in regular active service at the time of oral argument.

The difference between the Commission's new regulations governing parole and reparole for D.C. Code offenders is at the heart of this appeal from the District Court's dismissal of Thaddeus Fletcher's petition for a writ of habeas corpus. Fletcher's petition alleges, *inter alia,* that the Commission's retroactive application of the new federal regulations during his reparole hearing in 2000 violated the Ex Post Facto Clause of the United States Constitution, U.S. Const. art. I, § 9, cl. 3, and entitles him to habeas relief. We agree with Fletcher that the District Court erred in dismissing his petition.

Fletcher was convicted of a felony under the D.C. Code in 1980, and was subsequently released on parole by the Board. In 1998, during the period when authority over D.C. Code offenders was in the process of being transferred to the Commission, the Board revoked Fletcher's parole after he was convicted of a new felony in Maryland. By the time Fletcher came up for reparole in 2000, the Commission had assumed all responsibility for the parole and reparole of felons convicted under the D.C. Code. In considering Fletcher's case for reparole, the Commission applied the new federal regulations, not the displaced D.C. Board regulations. This meant that, in accordance with the federal regulations, because Fletcher's parole had been revoked for an offense that was not a D.C. Code offense, the Commission declined to consider his post-incarceration behavior, such as rehabilitative accomplishments, in weighing his entitlement to reparole. Fletcher claims that his rehabilitative accomplishments would have been taken into account under the D.C. Board's regulations for reparole.

Fletcher's *pro se* habeas petition alleges, among other things, that the retroactive application of the federal reparole regulations, rather than the Board's regulations, during his 2000 reparole hearing, created a significant risk of increased punishment, and is thus an unconstitutional ex post facto law. The District Court denied Fletcher's habeas petition. Appellant

appears before us seeking a reversal, and a remand with instructions that he is entitled to "sufficient discovery" to support his efforts to demonstrate that, as applied to him, the federal regulations, in their practical operation, create a significant risk of increased punishment.

In dismissing Fletcher's habeas petition, the District Court assumed that parole/reparole regulations are not "laws" for ex post facto purposes. We squarely rejected this position. *Fletcher v. District of Columbia*, 391 F.3d 250, 251 (D.C. Cir. 2004) ("*Fletcher II*"), *granting reh'g and vacating in part*, 370 F.3d 1223 ("*Fletcher I*"). *Fletcher II* makes it clear that, under *Garner v. Jones*, 529 U.S. 244 (2000), the critical question in ex post facto challenges to retroactively applied parole/reparole regulations is whether, as a practical matter, the retroactive application creates a significant risk of prolonging an inmate's incarceration. We must remand this case to afford the District Court an opportunity to review Fletcher's petition under this analytical framework.

It appears that the District Court also may have read Fletcher's petition too narrowly, countenancing only Fletcher's claim that the retroactive application of the federal regulations would delay the date on which he became *eligible* for reparole. Fairly construed, Fletcher's habeas petition alleges a stronger claim. He asserts that the federal reparole regulations, unlike the Board's former regulations, are primarily concerned with punishment and recidivism, and do not factor evidence of post-incarceration rehabilitation into reparole determinations. This difference, he argues, creates a significant risk that he will linger in prison for longer than he reasonably assumed when his parole was revoked, because he will not be granted reparole under the new federal regulations. Fletcher has presented a viable claim which is entitled to fair consideration. The decision of the District Court is therefore reversed, and the case remanded for further proceedings consistent with this opinion.

5

(The parties and the case law make reference to "regulations," "rules," and "guidelines," interchangeably, in discussing the Board's and the Commission's parole/reparole regimes. These labels are insignificant to our disposition of this appeal.)

## I. BACKGROUND

### A. *Changes to Parole and Reparole Regulations for D.C. Code Offenders*

In 1997, Congress transferred responsibility for the imprisonment of all felons convicted under the D.C. Code from the District of Columbia to the federal government. National Capital Revitalization and Self-Government Improvement Act of 1997 ("Revitalization Act" or the "Act"), Pub. L. No. 105-33, 111 Stat. 712, 734-37 (codified at D.C. CODE §§ 24-101 *et seq.* (2001 & Supp. 2005)). As part of the Revitalization Act, Congress transferred authority over "any imprisoned felon who is eligible for parole or reparole under the [D.C.] Code" from the D.C. Board of Parole to the U.S. Parole Commission. § 11231, 111 Stat. at 745. The U.S. Parole Commission was required to begin the process of assuming its new jurisdiction by August 5, 1998. *Id.* The Act provided that the D.C. Board of Parole would be abolished once the transfer of authority to the Commission was completed. *Id.*

Under the Act, the Commission is vested with "exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons, provided that the Commission adheres to [statutory] rulemaking procedures." *Id.* In 1998 and 2000, the Commission undertook two rounds of rulemaking which resulted in the regulations applied by the Commission at Fletcher's reparole hearing in 2000.

Prior to the Commission's adoption of new regulations, parole and reparole determinations for D.C. Code offenders

were guided by the D.C. Board's regulations. *See* D.C. MUN. REGS. tit. 28, §§ 100 *et seq.* (1987) (repealed Aug. 5, 2000). Under these regulations, a person whose parole was revoked "based on one or more new felony charges or convictions" was entitled to an initial reparole hearing within nine to twenty-four months depending on the number of years remaining on the maximum sentence. D.C. MUN. REGS. tit. 28, § 104.8-104.9. The Board, however, reserved its discretion to "order a parole reconsideration date it determine[d] to be appropriate." D.C. MUN. REGS. tit. 28, § 104.11.

At D.C. Board reparole hearings, release decisions were based on the same criteria used in connection with parole determinations. D.C. MUN. REGS. tit. 28, § 204.1. To "determin[e] whether an incarcerated individual [would] be paroled or reparoled," the D.C. Board employed an analytic framework that relied on both "pre and post-incarceration factors." *Id.* The Board would first consider the following pre-incarceration factors: prior convictions and adjudications, prior commitments of more than 30 days, age at commission of current offense, recent commitment-free period, status of prisoner at time of current offense, and history of heroin or opiate dependence. D.C. MUN. REGS. tit. 28, § 204.4-204.16. The pre-incarceration factors were then weighed by a formula to determine the candidate's risk category, called a "salient factor score." D.C. MUN. REGS. tit. 28, § 204.17 & Appendix 2-1. The Board would then consider pre- and post-incarceration factors to determine whether the candidate should be reparoled. D.C. MUN. REGS. tit. 28, § 204.18. Two post-incarceration factors in particular were important: institutional behavior and "sustained achievement in the area of prison programs, industries, or work assignments while under confinement for the current offense." D.C. MUN. REGS. tit. 28, § 204.18(h)-(i). These factors, along with a second set of pre-incarceration factors, were then integrated into a calculus to produce a point score which constrained the Board's discretion in making final reparole

determinations. *See* D.C. MUN. REGS. tit. 28, § 204.19 & Appendix 2-1. The regulations allowed for discretionary departures from the point score "in unusual circumstances." D.C. MUN. REGS. tit. 28, § 204.22. Finally, the regulations provided that, "[i]n general, the Board shall not grant parole unless the prisoner has substantially observed the rules of the institution in which he or she is confined." D.C. MUN. REGS. tit. 28, § 205.1. At rehearings, the Board would take the original "total point score from the initial hearing and adjust that score according to the institutional record of the candidate since the last hearing pursuant to Appendix 2-2." D.C. MUN. REGS. tit. 28, § 204.21.

The D.C. Board's regulations plainly evidence a rehabilitative focus in making parole and reparole determinations. Post-incarceration factors were formally integrated into release determinations. This is different from the current federal regulations' singular focus on pre-incarceration factors. *See Cosgrove v. Thornburgh*, 703 F. Supp. 995, 1003-04 (D.D.C. 1998) (finding that the Board utilized both pre-incarceration and post-incarceration factors in making parole suitability determinations, whereas "[t]he Commission uses only two pre-incarceration factors, thus de-emphasizing any rehabilitative results from incarceration"). The U.S. Parole Commission recognized this difference when it undertook rulemaking in advance of taking over the D.C. Board's authority in 1998.

Acknowledging that "the parole function for D.C. Code offenders rests on a premise somewhat different from that of the federal parole guidelines," the Commission passed its interim parole regulations, choosing to incorporate the rehabilitative factors of the D.C. Board's regulations. *See* Paroling, Recommitting, and Supervising Federal Prisoners: Prisoners Serving Sentences Under the District of Columbia Code ("Interim Parole Regulations"), 63 Fed. Reg. 39,172, 39,174

(proposed July 21, 1998) (codified at 28 C.F.R. §§ 2.70-2.90 (1999)) (citing *Cosgrove*, 703 F. Supp. at 1004 n.6); *see* 28 C.F.R. §§ 2.73, 2.80 (1999). No such modifications were made in the regulations governing decisions to grant reparole when the new offense for which parole was revoked was not a D.C. Code offense. Interim Parole Regulations, 63 Fed. Reg. at 39,175*; see* 28 C.F.R. § 2.87 (1999). In other words, the federal regulations for reparole apply when a D.C. Code offender's parole is revoked based on an offense that was not a D.C. Code offense. *Id*. The federal reparole regulations only consider offense and offender characteristics. *See* 28 C.F.R. § 2.20 (1999) (federal parole framework incorporated into reparole analysis by 28 C.F.R. § 2.21). The interim regulations went into effect on August 5, 1998. *See* Interim Parole Regulations, 63 Fed. Reg. at 39,175.

In 2000, the Commission's interim rules were partially modified and then promulgated as final rules. The final rules took effect on August 5, 2000. *See* Paroling, Recommitting, and Supervising Federal Prisoners: Prisoners Serving Sentences Under the District of Columbia Code ("Final Parole Regulations"), 65 Fed. Reg. 45,885 (proposed July 26, 2000) (codified at 28 C.F.R. §§ 2.70-2.107 (2001)). The final rules specified the Commission's special reparoling procedures for prisoners serving a new, parolable D.C. Code sentence, but otherwise made no changes to its general presumption that reparole determinations would be based on the federal reparole regulations. *Id.* at 45,894; *see* 28 C.F.R. § 2.81 (2001). The final regulations "apply to all prisoners and parolees . . . who are serving sentences under the District of Columbia Code for felony crimes committed prior to August 5, 2000." Final Parole Regulations, 65 Fed. Reg. at 45,887.

In 2001, the Commission undertook a final round of rulemaking in relation to its reparole provision for D.C. Code offenders. The new amendment clarified the Commission's

authority in subsequent review hearings to make findings of fact regarding issues not resolved by the D.C. Board of Parole at an initial revocation hearing. *See* Paroling, Recommitting, and Supervising Federal Prisoners: Prisoners Serving Sentences Under the District of Columbia Code ("Reparole Amendment"), 66 Fed. Reg. 37,136 (proposed July 17, 2001) (codified at 28 C.F.R. § 2.81 (2005)). This, in the Commission's view, enhanced its ability to properly determine suitability for reparole under the federal regulations and addressed situations where the Board had revoked parole based on administrative charges sufficient to warrant revocation and return to prison, but without reaching more serious criminal charges. *Id.* The amended reparole provisions were made "fully retroactive to all reparole decisions of the Commission from August 5, 1998, forward, and shall apply to all reparole decisions made by the Commission in the future with respect to offenders whose paroles were revoked by the D.C. Board of Parole." *Id.* at 37,137.

## B. *Thaddeus Fletcher – Reparole*

Fletcher is serving a sentence imposed by the District of Columbia Superior Court. He was convicted of rape in 1980, and sentenced to a term of 12 to 36 years in prison. *Fletcher v. Reilly*, CA No. 01-2058, 2003 U.S. Dist. LEXIS 26412, at *1 (D.D.C. Nov. 24, 2003). The D.C. Board released Fletcher on parole in 1990 but revoked that parole in 1998. *Id.* at *1-2. Although the Board's paroling and reparoling authority over eligible District of Columbia prisoners had already passed to the U.S. Parole Commission, the Board retained jurisdiction to supervise parolees until August 5, 2000. Reparole Amendment, 66 Fed. Reg. at 37,136. In October of 1998, the Board revoked Fletcher's parole and ordered that a reparole hearing would be conducted by August 2000. *Fletcher*, 2003 U.S. Dist. LEXIS 26412, at *2. The most important ground supporting the Board's revocation order was Fletcher's Maryland conviction. *See* U.S. Parole Commission's Opposition to Petition for Habeas

Corpus, Exhibits G & H, *Fletcher v. Reilly*, CA No. 01-2058 (D.D.C. Nov. 24, 2003).

When Fletcher's reparole hearing was held in November 2000, the Commission had assumed all of the responsibilities of the D.C. Board of Parole. *See* Reparole Amendment, 66 Fed. Reg. at 37,136. In considering Fletcher's case, the Commission applied the federal reparole regulations, as amended in August 2000. After determining that Fletcher's salient factor score was five and the severity of his offense fell into Category Eight, the Commission set a presumptive parole date of October 29, 2010. *Fletcher*, 2003 U.S. Dist. LEXIS 26412, at *2-3; U.S. Parole Commission's Opposition to Petition for Habeas Corpus, Exhibits I & J ("Ex. I" & "Ex. J"), *Fletcher v. Reilly*, CA No. 01-2058 (D.D.C. Nov. 24, 2003).

Neither the salient factor score nor the offense severity category takes into account Fletcher's post-incarceration behavior. *See* 28 C.F.R. §§ 2.81, 2.21, 2.20 (2001). The Commission acknowledged that Fletcher had received a B.A. in Urban Studies from the University of the District of Columbia and that he was working as a clerk in the "Metro Shop" and a supervisor in the "Fabric Industry." However, neither of these rehabilitative accomplishments, nor Fletcher's completion of various life-skills and psychological programs, were formally weighed by the Commission in its reparole decision. *See* Ex. I, *supra*, at 3-4; Ex. J, *supra*, at 1. In other words, Fletcher's post-incarceration behavior did not factor into the assessment of either his reparole *eligibility – i.e.*, the earliest date an inmate may be considered for reparole – or his reparole *suitability – i.e.*, whether the inmate is in fact a good candidate for release. As noted above, the reparole regulations have been amended since Fletcher's reparole hearing in 2000. *See* 28 C.F.R. § 2.81 (2005). The new changes, however, do not affect Fletcher's claim in any material way.

## C. *Procedural History*

On September 27, 2001, Fletcher filed a petition for a writ of habeas corpus in the United States District Court for the District of Columbia. At the time, he was confined at the Lorton Correctional Complex in Lorton, Virginia, which was operated by the District of Columbia Department of Corrections. He named his immediate custodian, Warden Dennis Harrison, as the respondent, along with Edward F. Reilly, Jr., Chairman of the U.S. Parole Commission. Shortly after filing his petition, Fletcher was transferred to a federal penitentiary in South Carolina. Pursuant to the Revitalization Act, the Lorton Correctional Complex was closed in 2001, and the D.C. Board of Parole was legally extinguished. *See* D.C. CODE §§ 24-101, 24-131.

Fletcher's petition asserts, *inter alia*, an ex post facto claim based on two theories. He claims that the retroactive application of the federal reparole regulations adversely affects both his *eligibility* and his *suitability* for reparole. *See* Petitioner's Response to Response Filed by the U.S. Parole Commission at 2, *Fletcher v. Reilly*, CA No. 01-2058 (D.D.C. Nov. 24, 2003). Though inartfully pled, the essence of Fletcher's claim is easily discernible: the Commission's retroactive application of the federal reparole regulations creates a significant risk of increasing his stay in prison, because the federal regulations determine the appropriateness of reparole based upon measures that focus solely on pre-incarceration behavior. By contrast, the D.C. Board's reparole regulations placed significant weight on institutional conduct and rehabilitative accomplishments. Petition for Writ of Habeas Corpus or in the Alternative for Writ of Mandamus at 21-22, *Fletcher v. Reilly*, CA No. 01-2058 (D.D.C. Nov. 24, 2003). Fletcher's acquisition of a B.A. from the University of the District of Columbia, for example, would have been a favorable factor affecting his suitability for reparole

under the D.C. Board's regulations, but it is irrelevant under the federal regulations.

Procedurally, this case is complicated by the fact that Fletcher, acting *pro se*, also raised his ex post facto claim in a civil rights suit brought under 42 U.S.C. § 1983. *See Fletcher I*, 370 F.3d at 1225. At the time of filing, there was substantial confusion over whether ex post facto parole claims could be litigated under § 1983 or were only reachable through habeas corpus. *See Wilkinson v. Dotson*, 125 S. Ct. 1242, 1248 (2005) (resolving issue by holding that ex post facto challenges to retroactive application of parole guidelines do not fall within the "habeas exception" to § 1983 where a favorable judgment will not necessarily imply immediate release from confinement or a shorter prison term). Since the cases were related, Fletcher's § 1983 and habeas cases were both assigned to the same trial judge.

On July 1, 2002, the District Court dismissed Fletcher's § 1983 lawsuit, ruling that his ex post facto claim must be brought as a petition for habeas corpus. *See Fletcher I*, 370 F.3d at 1226. That judgment was appealed. Meanwhile, the District Court stayed judgment on Fletcher's habeas petition, pending reconsideration of Fletcher's salient factor score by the Commission. *Fletcher*, 2003 U.S. Dist. LEXIS 26412, at *1. On August 14, 2002, the U.S. Parole Commission acknowledged an error in its original calculation of Fletcher's salient factor score and set a new presumptive parole date in October 2007. The Commission also set a review hearing for July 2004. *Id.* at *3.

On November 24, 2003, the District Court dismissed Fletcher's habeas petition. As to Fletcher's ex post facto claim, the court observed that, "[a]lthough the question is unsettled, the weight of authority holds that parole guidelines and rules such as those at issue in this case, which simply provide guides for the exercise of discretion, do not constitute 'laws' subject to an

ex post facto analysis." *Id.* at *9. The District Court also noted that the Commission had given Fletcher a rehearing within two years, just as the D.C. Board would have done under its reparole regulations, and that Fletcher had been granted a *presumptive* reparole date. *Id.* at *12. In the District Court's view, Fletcher had failed to show that he was adversely affected by the retroactive application of the federal regulations. The court also dismissed Fletcher's petition as to Warden Harrison on the ground that the issues in the petition only address actions taken by the U.S. Parole Commission. *Id.* at *16 n.8.

Fletcher filed a timely notice of appeal. The District Court granted a certificate of appealability for the ex post facto claim, finding that Fletcher had made a substantial showing of the denial of a constitutional right, one that reasonable jurists could debate, because it is unsettled as to whether parole regulations can constitute ex post facto laws. *Fletcher v. Reilly*, CA No. 01-2058, Order Granting Certificate of Appealability (D.D.C. Jan. 9, 2004).

The appeal here was held in abeyance pending the resolution of Fletcher's appeal of the District Court's dismissal of his § 1983 claim. On November 19, 2004, this court reversed the District Court's dismissal of Fletcher's § 1983 claim and remanded the case for further proceedings consistent with *Garner. Fletcher II*, 391 F.3d at 251. This appeal was then reactivated. On January 10, 2005, the District Court granted Fletcher's motion to stay any further proceedings on his § 1983 claim, pending resolution of this habeas appeal. Fletcher now contends that it has always been his intention to pursue his ex post facto claim in a single proceeding.

## II. ANALYSIS

### A. *Jurisdiction*

Normally, the only proper defendant in a habeas case is the petitioner's "immediate custodian" – that is, the warden of the

facility in which the petitioner is incarcerated at the time he files the habeas petition. *Rumsfeld v. Padilla*, 542 U.S. 426, 434, 439 (2004); *see also Blair-Bey v. Quick*, 151 F.3d 1036, 1039 (D.C. Cir.), *modified on reh'g in other respects*, 159 F.3d 591 (D.C. Cir. 1998) ("When a prisoner seeks to challenge parole-related decisions, the warden of the prison . . . is the prisoner's 'custodian.'"); *Chatman-Bey v. Thornburgh*, 864 F.2d 804, 811 (D.C. Cir. 1988) (en banc) ("the proper defendant in federal habeas cases is the warden" of the facility where prisoner is incarcerated at the time when he files his petition).

In his petition for habeas, Fletcher named his immediate custodian, Dennis Harrison, the Warden at the Lorton Correctional Complex, along with Edward F. Reilly, Jr., Chairman of the U.S. Parole Commission. He therefore complied with the "immediate custodian" rule. Shortly after filing his petition, however, Lorton was closed pursuant to the Revitalization Act, and Fletcher was transferred to a federal penitentiary in South Carolina. "[W]hen the Government moves a habeas petitioner after [he] properly files a petition naming [his] immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Stokes v. U.S. Parole Comm'n*, 374 F.3d 1235, 1238 (D.C. Cir. 2004) (quoting *Padilla*, 542 U.S. at 441 (explaining *Ex parte Endo*, 323 U.S. 283 (1944))). The Commission has legal authority to effectuate Fletcher's release, so it is a proper respondent in this case. Indeed, the U.S. Parole Commission has appeared in this case, responded to the merits of Fletcher's claim, and raised no objections on grounds of venue or personal jurisdiction. *See Chatman-Bey*, 864 F.2d at 813 ("It is, of course, elementary that a defense of improper venue or lack of personal (as opposed to subject matter) jurisdiction is waived unless the defense is asserted . . . .").

We also note that the Commission, or the United States in its stead, might have sought to substitute the Warden of the federal penitentiary in South Carolina where Fletcher is now incarcerated. In *Crawford v. Jackson*, 323 F.3d 123 (D.C. Cir. 2003), a case involving circumstances similar to those here, the court held that it had jurisdiction over a habeas petition properly filed by a petitioner in custody at the Lorton Correctional Complex prior to its closure. The United States entered an appearance in *Crawford* and advised the court that it waived any objection to lack of personal jurisdiction, and consented to "substitute the Warden at FCI Petersburg, Stephen M. Dewalt, as the custodian of appellant/petitioner Curtis E. Crawford." *Id.* at 126 (internal citations omitted). The same can be done here when the case is remanded to the District Court if the United States deems this to be a prudent course. The main point here is that, because Fletcher named his immediate custodian when he filed his petition for habeas, and the Commission is within the jurisdiction of the District Court and has authority to effectuate Fletcher's release on reparole, the District Court has jurisdiction to consider Fletcher's habeas petition.

Because complaints by D.C. Code offenders about detention resulting from decisions of a parole board are complaints regarding a detention "aris[ing] out of process issued by a State court," 28 U.S.C. § 2253(c)(1)(A) (2000), this court's jurisdiction is limited to the issues certified for appeal, in this case the District Court's dismissal of Fletcher's ex post facto claim. *See Madley v. U.S. Parole Comm'n*, 278 F.3d 1306, 1310 (D.C. Cir. 2002).

The District of Columbia, appearing on behalf of appellee Harrison, takes no position on the merits of Fletcher's ex post facto claim, but asks this court to affirm the District Court's dismissal of the petition as to Harrison. The petition contains no allegation of wrongdoing by any District of Columbia officials, and Harrison is no longer Fletcher's Warden. Furthermore, the

D.C. Board of Parole no longer exists, so Fletcher can obtain no redress from the District of Columbia. We therefore affirm the dismissal of Fletcher's claims against the District of Columbia defendant. *See Fletcher I*, 370 F.3d at 1225 n.\*\*.

## B. *Ex Post Facto Claim*

We turn now to the merits. Fletcher argues that the District Court erred in holding that discretionary parole regulations can never constitute "laws" for ex post facto purposes. He also contends that the District Court's analysis of his claims was inadequate, because the court did not employ the analytical framework prescribed by *Garner* and *Fletcher II*. Finally, he contends that the Commission's retroactive application of the new federal reparole regulations, rather than the Board's regulations, during his 2000 reparole hearing, created a significant risk of increased punishment, and is thus an unconstitutional ex post facto law. We agree with Fletcher that the District Court's analysis was based on some faulty premises, so the case must be remanded for further consideration.

First, the District Court erred in its analysis of the Board's regulations and the Commission's regulations. The court assumed that the Board's and Commission's parole/reparole rules are merely discretionary "guidelines." *Fletcher*, 2003 U.S. Dist. LEXIS 26412, at \*11-12. The court then expressed profound doubts that such "guidelines" are subject to ex post facto challenges. The District Court acknowledged that the question was unsettled, but clearly considered the weight of authority to hold that parole/reparole regulations do not constitute "laws" subject to an ex post facto analysis. *Id.* at \*9. Accepting the Government's position, the District Court was also under the misconception that since the D.C. Board exercised discretion in applying the former D.C. parole/reparole regulations and the Commission exercises like discretion in applying the federal parole/reparole regulations, there could be no ex post facto violation. In other words, in the District Court's

view, a mere change in the manner in which discretion is exercised would not be unconstitutional. *Id.* at \*11-12. The problem here is that the premises underlying the District Court's analysis are erroneous.

As this court held in *Fletcher II*, *Garner* "foreclosed [a] categorical distinction between a measure with the force of law and guidelines . . . from which [a parole board] may depart in its discretion." 391 F.3d at 251 (internal citations and quotation marks omitted). The labels "regulation" and "guideline" are not determinative. And the existence of discretion is not dispositive. The controlling inquiry under *Garner* is how the Board or the Commission exercises discretion in practice, and whether differences between the exercise of discretion in two systems actually "create[] a significant risk of prolonging [an inmate's] incarceration." *Garner*, 529 U.S. at 251.

Second, as noted above, it appears that the District Court construed Fletcher's habeas petition too narrowly, for the court countenanced only Fletcher's claim that the retroactive application of the federal regulations would delay the date on which he became *eligible* for reparole. We find that appellant's habeas petition alleges a stronger claim, one that has yet to be addressed by the District Court.

The District Court read the petition as one exclusively about *eligibility* for reparole, and dismissed it on the ground that, if anything, Fletcher's eligibility for reparole is more certain under the new federal regulations than it was under the Board's former regulations. *Fletcher*, 2003 U.S. Dist. LEXIS 26412, at \*12. Appellant's petition, however, cannot fairly be read so narrowly. *See United States v. Palmer*, 296 F.3d 1135, 1143 (D.C. Cir. 2002) ("[A]llegations of *pro se* motioner, 'however inartfully pleaded,' are subject to 'less stringent standards than formal pleadings drafted by lawyers.'") (summarizing and quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam)). Fletcher alleged that the retroactive application of the federal

reparole regulations adversely affects both his *eligibility* and his *suitability* for reparole. In particular, Fletcher asserts that the federal reparole regulations, unlike the Board's former regulations, are primarily concerned with punishment and recidivism and, therefore, the Commission does not account for evidence of post-incarceration rehabilitation in reparole determinations. This difference, he argues, creates a significant risk that he will linger in prison for longer than he reasonably assumed when his parole was revoked, because he will not be reparoled under the new federal regulations. The District Court erred when it narrowly construed Fletcher's petition as only a claim that the retroactive application of the federal regulations would impact his reparole eligibility. In failing to address Fletcher's stronger suitability claim, the District Court failed to apply *Garner* properly.

Third, because the District Court proceeded on the basis of faulty assumptions about the difference between "guidelines" and "regulations," and the "discretion" purportedly exercised by the Board and the Commission, the court failed to give full effect to *Garner*. Under *Garner*, a retroactively applied parole or reparole regulation or guideline violates the Ex Post Facto Clause if it "creates a significant risk of prolonging [an inmate's] incarceration." 529 U.S. at 251. "[T]he claimant 'must show that as applied to his own sentence the law create[s] a significant risk of increasing his punishment.'" *Fletcher II*, 391 F.3d at 251 (quoting *Garner*, 529 U.S. at 255). Equally important for this case, *Garner* outlines two ways in which "significant risk" can be established by a petitioner. First, it can be established if there are facial distinctions between the old and new parole/reparole regulations. Second, "[w]hen the rule does not by its own terms show a significant risk," a claimant may also meet his burden "by [introducing] evidence drawn from the rule's *practical implementation by the agency* charged with exercising discretion, that its retroactive application *will result in a longer period of incarceration than under the earlier rule*."

*Garner*, 529 U.S. at 255 (emphases added). The controlling inquiry "is one of practical effect." *Fletcher II*, 391 F.3d at 251. A district court must assess the magnitude of the risk in terms of the practical effect of the change in regulations on the length of a petitioner's incarceration.

On their face, the federal reparole regulations applied in Fletcher's case are substantially different from the D.C. Board's regulations that were repealed in August 2000. As Fletcher alleged in his habeas petition, the old and new rules diverge most clearly with respect to the weight that post-incarceration behavior is given in reparole determinations in cases involving a person whose parole was revoked for a non-D.C. Code offense. Fletcher has thus presented a creditable claim that the District Court must explore within the framework laid out by *Garner* and explained by this court in *Fletcher II*.

Under *Garner* and *Fletcher II*, the District Court was required to compare the federal regulations and the Board's displaced scheme with respect to reparole. The District Court, however, was under the mistaken impression that "the [D.C.] Board of Parole had no guidelines concerning reparole decisions, but merely provided for at least bi-annual rehearings." *Fletcher*, 2003 U.S. Dist. LEXIS 26412, at *5 (citing D.C. MUN. REGS. tit. 28, § 104.4-104.9 (procedural provisions)). This finding was erroneous, for there is ample evidence that both the former Board regulations and the new federal regulations have rules and practices covering both parole and reparole.

Because the District Court misconstrued the Board's regulations, the court never focused in on a detailed comparison of the two reparole regimes. This comparison must include: (1) a determination as to whether, in practice, the federal reparole regulations, unlike the Board's former regulations, are primarily concerned with punishment and recidivism and, as a result, the Commission does not account for evidence of post-incarceration rehabilitation in reparole determinations; and (2) a determination

as to whether, in light of this alleged practice, the Commission's application of its reparole regulations creates a significant risk that Fletcher will linger in prison longer, because he faces a diminished likelihood that he will be reparoled under the new federal regulations.

The Commission cites *Glascoe v. Bezy*, 421 F.3d 543 (7th Cir. 2005), in support of its claim that the District Court's decision dismissing Fletcher's petition should be affirmed. *Glascoe*, however, is plainly distinguishable. The petitioner in that case challenged the retroactive application of the Commission's *parole* regulations for D.C. Code offenders. As previously discussed, the regulations governing *parole* decisions for D.C. Code offenders are materially different from those governing the *reparole* determination in this case. *Compare* 28 C.F.R. § 2.80 (2001), *with* 28 C.F.R. §§ 2.81, 2.21, 2.20 (2001). The new federal regulations governing parole suitability for D.C. Code offenders take into account post-incarceration behavior; however, the federal regulations do not take into account post-incarceration behavior when the Commission determines suitability for reparole for offenders, like Fletcher, whose parole was revoked on the basis of an offense that was not a D.C. Code offense.

Moreover, the Seventh Circuit found that Glascoe's petition for parole would have been denied even under the Board's regulations:

> There might be a case where application of the 1999 [federal] guidelines rather than the 1981 [D.C. Board] guidelines substantially increases an inmate's risk of increased punishment so as to violate the Ex Post Facto Clause. . . . But this is not such a case; the record shows that Glascoe would have been denied parole under either set of guidelines, and there is no ex post facto violation.

*Glascoe*, 421 F.3d at 549. Glascoe had a long record of negative institutional behavior, *id.* at 545-46, and he had presented no evidence of rehabilitation, *id.* at 549. Given the extreme violence of his crimes and his negative institutional behavior, the court found that Glascoe could not show that he personally was at significant risk of increased punishment. *Id.* at 548. The record Fletcher has presented, by contrast, shows numerous rehabilitative accomplishments. And he has offered a viable claim that there is a significant risk that his punishment will be increased by virtue of the Commission's retroactive application of the new federal regulations governing reparole.

Fletcher has made out a prima facie case that his rights under the Ex Post Facto Clause have been violated, because he is a D.C. Code offender whose parole was revoked based on an offense that was not a D.C. Code offense. Under these circumstances, the facial distinctions between the Board's regulations and the federal regulations that replaced them, specifically the fact that the new federal regulations, unlike the regulations they replaced, do not take post-incarceration behavior into account, is sufficient to warrant factual development on his habeas petition. Under *Garner* and *Fletcher II*, Fletcher is entitled to a searching comparison of the old and new reparole regimes in order to determine whether the U.S. Parole Commission's application of the federal reparole regulations at Fletcher's reparole hearing in 2000 created a significant risk that he will be subjected to a lengthier incarceration than he would have been if the Commission had adhered to the rules and practices of the D.C. Board.

### III. CONCLUSION

The District Court's dismissal of appellant's habeas petition is reversed and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*