# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 6, 2009         Decided August 6, 2010

No. 08-5385

CHARLES A. PHILLIPS,
APPELLANT

v.

ISAAC FULWOOD, JR., CHAIRMAN OF THE UNITED STATES
PAROLE COMMISSION, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:06-cv-01650)

*Christopher F. Branch* argued the cause for appellant. With him on the briefs was *Jason D. Wallach*.

*Elizabeth H. Danello*, Assistant U.S. Attorney, argued the cause for appellees. With her on the brief were *Roy W. McLeese III* and *Kenneth Adebonojo*, Assistant U.S. Attorneys. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: GARLAND, BROWN, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*:  Appellant Charles Phillips is in prison for murdering two people in 1977.  Although he has been eligible for parole since 2003, the United States Parole Commission -- applying regulations it issued in 2000 -- has repeatedly found him unsuitable for release.  Phillips contends that the Commission should have applied the parole rules that were in effect when he committed his crimes, and that its failure to do so violated the Ex Post Facto Clause of the Constitution.  Finding no significant risk that application of the 2000 regulations has prolonged Phillips' incarceration, *Garner v. Jones*, 529 U.S. 244, 255 (2000), we reject his challenge and affirm the decision of the district court.

I

The first of the crimes for which Phillips is imprisoned took place in May 1977.  After learning that his former girlfriend was involved in another relationship, Phillips forced her to lure the new boyfriend to her apartment by telling him she was sick.  Once the boyfriend arrived, Phillips stabbed him to death.  Phillips next turned his attention to his former girlfriend, stabbing her in the side and wrist but not killing her.  Although he was arrested for these crimes the next day, Phillips was soon released on bond.  Seven months later, and now armed with a gun, he broke into the same ex-girlfriend's apartment and discovered her with another man.  Phillips shot and killed the man, who turned out to be a police officer.  He was convicted of both murders in the Superior Court of the District of Columbia.  In 1978, the court sentenced him to imprisonment for an aggregate term of 35.5 years to life.

In February 2003, after serving 302 months, Phillips became eligible for parole.  *See* D.C. Adult Initial Hr'g Summ. at 1-2 (Nov. 19, 2002) (noting that his minimum sentence was reduced to 302 months due to good time credits).  His initial hearing was

conducted by the United States Parole Commission, which assumed responsibility for D.C. prisoners when Congress abolished the D.C. Board of Parole in 1998.  National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, tit. XI, § 11231(a), (b), 111 Stat. 712, 745 (providing that the Commission shall replace the Board no later than one year after the date of enactment); *see Fletcher v. Reilly*, 433 F.3d 867, 870 (D.C. Cir. 2006).  The Commission's 2000 regulations direct it to calculate a "Base Point Score" by applying a rubric that assigns points for factors like prior convictions and the nature of the offense.  28 C.F.R. §§ 2.20, 2.80(c), (f).  The score translates into a range of months that, combined with an adjustment for behavior in prison, is added to the prisoner's eligibility date to produce the "Total Guideline Range," *id.* § 2.80(h)-(l), the figure the Commission uses to "determin[e] whether an eligible prisoner should be paroled," *id.* § 2.80(b).  The regulations state that "the Commission shall apply the guidelines," *id.*, but that it "may, in unusual circumstances, grant or deny parole to a prisoner notwithstanding the guidelines," *id.* § 2.80(n).  In particular, it may depart "[i]f the prisoner is deemed to be a poorer or more serious risk [to society] than the guidelines indicate."  *Id.*

The Commission applied the 2000 regulations at Phillips' initial parole hearing, which took place a few months before his eligibility date, in November 2002.  Because his crimes were violent and resulted in the death of a victim, the Commission assigned Phillips a base point score of five -- translating into an additional 18-24 months in prison.  Notice of Action at 2-3 (Dec. 13, 2002).  The Commission then gave Phillips an upward adjustment of 0-24 months for a series of prison disciplinary infractions that occurred between 1979 and 1987, and a downward adjustment of 16 months for superior program achievement in prison.  *Id.* at 3; D.C. Adult Initial Hr'g Summ. at 1.  Combining the three adjustments with Phillips' eligibility

date of 302 months yielded a Total Guideline Range of 304-334 months. 2002 Notice of Action at 3.

Rather than set a release date within that range, however, the Commission denied Phillips parole and ordered a rehearing in November 2005 -- at which time Phillips would have served 335 months. The Commission explained that an upward departure from the guideline range was warranted because Phillips was a "more serious risk than indicated" by his base point score, which captured the first murder but did not take into account the second or the stabbing of his ex-girlfriend. 2002 Notice of Action at 1.

Phillips' next parole hearing took place a month ahead of schedule, in October 2005. Acknowledging that Phillips had been confined for 334 months as of that date, the Commission nonetheless declined to parole him -- again on the ground that Phillips was "a more serious risk" to society than his base point score indicated. Notice of Action at 1 (Nov. 18, 2005). The Commission found that risk demonstrated by the nature of his offense, noting that Phillips "stabbed an individual to death after luring him into [his] ex-girlfriend's apartment" and that he "seriously assaulted" the ex-girlfriend. *Id.* "After being arrested on this offense and released from custody," the Commission continued, Phillips "broke into the ex-girlfriend's apartment . . . [,] confronted her and her companion[,] and shot her companion to death after an altercation." *Id.* In light of the risk that the Commission associated with this record, it denied Phillips parole and stated that it would conduct a new hearing three years later.[1]

---

[1]The government advises that Phillips was denied parole at that hearing, which took place in November 2008. The reasons are not in the record of this appeal. Appellees' Br. 10 n.5.

In April 2007, Phillips filed suit in the United States District Court for the District of Columbia. Phillips alleged that the Commission violated the Ex Post Facto Clause when it used the 2000 regulations to determine his suitability for parole, notwithstanding that he committed his crimes in 1977. At that time, the relevant rules were the D.C. Parole Board's 1972 regulations. Those regulations "requir[ed] only that in exercising its discretion the Board consider a list of factors" like "the inmate's offense, prior history of criminality, [and] institutional experience," and did not specify a way to translate the factors into a parole release date. *Blair-Bey v. Quick*, 151 F.3d 1036, 1048 (D.C. Cir. 1998) (citing 9 D.C.R.R. § 105.1(a)-(f) (1981)); *see* 9 D.C.R.R. § 105, 105.1 (1972); *see also* D.C. CODE § 24-204(a) (1973). But rather than rely on the Board's 1972 regulations in making his ex post facto claim, Phillips sought to be evaluated under regulations the Board published in 1987.[2] He contended that the 1987 regulations were in force in practice, although not yet in name, when he committed his crimes in 1977.

Like the Commission's 2000 regulations, the 1987 regulations contained a detailed rubric assigning points to factors like the nature of the offense, prior convictions, and prison disciplinary infractions -- although the factors were weighted differently than in the 2000 regulations. D.C. MUN. REGS. tit. 28, § 204.2, .4, .18, .19 & app. 2-1 (1987). Generally, the Board was to order release if the prisoner's point score was less than three. *Id.* § 204.19. But like the 2000 regulations, the 1987 regulations provided that the Board could depart from that outcome "in unusual circumstances," based on the prisoner's risk to society. *Id.* § 204.22; *see id.* app. 2-1, at 2-34, 2-35.

---

[2]While the regulations were actually promulgated in 1985, *see* 32 D.C. Reg. 940 (Feb. 15, 1985), the parties refer to them as the 1987 regulations because of their year of publication. We adopt that convention as well.

Phillips asked the district court to order the Commission to reconsider his parole application "in a manner consistent with the D.C. Parole Board's 1987 Guidelines," Compl. at 21, alleging that its use of the 2000 regulations had "resulted in [a] significant risk of prolonging [his] incarceration," *id.* at 18. According to Phillips, the 2000 regulations, unlike the 1987 regulations, permitted time to be added to a prisoner's eligibility date based on what he called "offense accountability" -- a determination that the prisoner's offenses were so grave as to warrant additional punishment on the ground of retribution or general deterrence, rather than risk to society.

In May 2008, the district court granted the Commission's motion to dismiss Phillips' complaint for failure to state a claim. *Sellmon v. Reilly*, 551 F. Supp. 2d 66, 99 (D.D.C. 2008) (*Sellmon I*). Phillips had committed his offenses in 1977, the district court noted, and there was "simply no evidence before the Court that the Board's practices pre- and post-1987 were similar enough to allow plaintiffs convicted prior to 1987 to rely upon the 1987 Regulations for purposes of arguing an *ex post facto* violation." *Id.* at 86; *see id.* at 76-78.

Phillips then filed a motion for reconsideration, which the district court denied. The court first reaffirmed its original rationale for dismissing the complaint. It then held that, even if Phillips were right that the 2000 regulations permitted consideration of offense accountability and the earlier regime did not, he could not show that it was the Commission's consideration of offense accountability that had lengthened his incarceration, rather than its consideration of his risk to society -- a factor available under both regimes. *See Sellmon v. Reilly*, 561 F. Supp. 2d 46, 49-50 (D.D.C. 2008) (*Sellmon II*). This appeal followed.

II

The Constitution declares that "No . . . ex post facto Law shall be passed." U.S. CONST. art. I, § 9, cl. 3. A "retroactively applied parole . . . regulation or guideline violates" this prohibition "if it 'creates a significant risk of prolonging [an inmate's] incarceration.'" *Fletcher*, 433 F.3d at 877 (quoting *Garner*, 529 U.S. at 251). Sometimes such a risk will be apparent from facial differences between the old and new rule. But "[w]hen the rule does not by its own terms show a significant risk, the [prisoner] must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule." *Garner*, 529 U.S. at 255; *see Fletcher*, 433 F.3d at 877.

In general, ex post facto claims require a comparison of the challenged scheme to the one in place when the prisoner committed his crimes. *See Garner*, 529 U.S. at 247; *Cal. Dep't of Corrections v. Morales*, 514 U.S. 499, 501-02 (1995). For Phillips, this would mean looking to the 1972 regulations. Rather than rely on those regulations, however, Phillips argues that the 1987 regulations codified the actual practice of the D.C. Board of Parole when he committed his crimes in 1977, and that they are a better reflection of that practice than the 1972 regulations. Hence, Phillips urges us to compare the 1987 regulations with the 2000 regulations in evaluating his ex post facto claim.

The district court initially found that Phillips had failed to state a claim under the Ex Post Facto Clause because he had no evidence to support his allegation that the 1987 regulations were in practical effect in 1977. Phillips contends that this misapprehends the applicable legal standard. In ruling on a

motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). As Phillips points out, the district court did not accept as true his allegation linking the 1977 practices to the 1987 regulations. The Commission responds that the court did not need to accept this allegation because it was not even "plausible" under the pleading standard the Supreme Court outlined in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and reaffirmed in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

We need not resolve this dispute. Even if we were to credit Phillips' allegations regarding the Commission's pre-1987 practices, he cannot show that application of the 2000 rather than the 1987 regulations created or creates a significant risk of prolonging his incarceration. *See Fletcher*, 433 F.3d at 877.

1. Phillips focuses on two adjustments the Commission made to his guideline release date when it applied the 2000 regulations. One is the way in which the Commission accounted for the violent nature of his crimes. The five points the Commission imposed on that ground translated into an additional 18-24 months in prison. *See* 2002 Notice of Action at 3. Phillips contends that, under the 1987 regulations, the same factor would have contributed only one point to his score -- and no additional prison time at all. Phillips also cites the Commission's treatment of the disciplinary infractions he committed while incarcerated. The Commission added 0-24 months to Phillips' guideline range on account of those infractions, but Phillips avers they were so old and minor that they would have escaped any penalty at all under the 1987 regulations. As a result, he concludes, his 1987 guideline release date would have been the same as his parole eligibility date -- 302 months -- rather than the 304-334 months prescribed by the 2000 guidelines.

The problem with this argument is that, as Phillips concedes, he has already served the time produced by both of the additions that he challenges. Oral Arg. Recording at 2:27-56. Indeed, he had done so by October 2005 at the latest, when he hit the 334-month mark. 2005 Notice of Action at 1. His challenge to how that figure was calculated was thus moot when he filed his lawsuit in 2007 and remains moot today. Regardless of whether the Commission should have applied the 1987 regulations and calculated a guideline release date of only 302 months, Phillips cannot "explain[] what adverse impact he continues to suffer as a result" of its failure to do so. *Anyanwutaku v. Moore*, 151 F.3d 1053, 1057 (D.C. Cir. 1998). He does not seek damages, and he already enjoys the same presumption of parole suitability that, he asserts, properly attached earlier. *See* 28 C.F.R. § 2.80(b), (n). Hence he has no "personal stake in the outcome" of his two challenges to his guideline date. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990)).

2. Of course, Phillips remains in prison, and he certainly has a personal stake in getting out. He does not, however, remain in prison because of his guideline release date. Rather, he remains in prison because the Commission departed upward from the guidelines. *See* 2005 Notice of Action at 1.[3] To the extent Phillips challenges that decision, his challenge is decidedly not moot.

---

[3]In reviewing the district court's dismissal of Phillips' complaint for failure to state a claim, we can rely on the reasons offered in the Commission's Notices of Action because those documents were "incorporated in [Phillips'] complaint." *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006) (citation omitted). Phillips does not object to our doing so; indeed he relies on the Notices himself.

But although that challenge presents a live controversy, it does not present a violation of the Ex Post Facto Clause. Although the 2000 regulations permit the Commission to depart upward from the guidelines, *see* 28 C.F.R. § 2.80(n), so too did the 1987 regulations, *see* D.C. MUN. REGS. tit. 28, § 204.22. Phillips notes that in "exceptional cases" the 2000 regulations permit the Commission to depart upward based on the gravity of the offense, 28 C.F.R. § 2.73(b), the consideration he terms "offense accountability." And he alleges that this ground for departure was not available under the 1987 regulations. Compl. ¶¶ 26, 59; *see also Sellmon I*, 551 F. Supp. 2d at 88.

But the Commission did not depart upward from Phillips' guideline range on the basis of offense accountability. Instead, as the government points out, it did so on the ground that he represented "a more serious risk" than his guideline range indicated. 2005 Notice of Action at 1.[4] The 2000 regulations permit the Commission, in "unusual circumstances," to depart upward based on a prisoner's risk to society. *See* 28 C.F.R. § 2.80(n). But so, too, did the 1987 regulations. *See* D.C. MUN. REGS. tit. 28, § 204.22 & app. 2-1, at 2-34. And neither Phillips' complaint nor his briefs offer any reason to believe that the Commission, operating under the 1987 regulations, would not have relied on that same rationale to conclude that 334 months was an insufficient term of imprisonment.[5]

---

[4]Although an intermediate-level parole official did recommend an upward departure to ensure that Phillips received a "sufficient sanction for a second murder and aggravated assault," Hr'g Summ. at 3 (Nov. 15, 2005), the Commission's decision instead relied on his risk to society, *see* 2005 Notice of Action at 1. Phillips acknowledges as much. Oral Arg. Recording at 31:13-25.

[5]Phillips does not contend that the upward departure would have been different if there had been a change in the guideline range. That is, although the Commission determined that the guideline range did

Accordingly, because Phillips cannot demonstrate that the Commission's application of the 2000 regulations created or "'creates a significant risk of prolonging [his] incarceration,'" he has no claim under the Ex Post Facto Clause. *Fletcher*, 433 F.3d at 877 (quoting *Garner*, 529 U.S. at 251); *see Glascoe v. Bezy*, 421 F.3d 543, 548-49 (7th Cir. 2005).

### III

For the foregoing reasons, the judgment of the district court is

*Affirmed.*

---

not fully capture the risk of releasing Phillips, its discretionary decision about what date would be acceptable for release on risk grounds was not a function of that range and hence does not save Phillips' two challenges to the range from mootness. Indeed, the Commission's decision to depart upward demonstrates that Phillips would have remained in prison regardless of the range: if the Commission thought 334 months was insufficient to protect society, a fortiori it would have thought the same of the 302 months prescribed by the 1987 regulations.