ROGERS, Circuit Judge,
concurring in part and dissenting in part.
This appeal and a related appeal[1] arise as a result of Congress’s transfer of parole. responsibilities from the D.C. Board of Parole to the U.S. Parole Commission in 1998. See National Capital Revitalization and Self-Government Improvement Act, Pub.L. No. 105-33, § 11231(a)-(c), 111 Stat. 712, 745 (1997), codified at D.C.Code § 24-131. These plaintiffs, who sued under 42 U.S.C. § 1983, were convicted when the D.C. Board was still in charge of parole decisions and they contend on appeal that the U.S. Commission is carrying out stricter parole practices than did the D.C. Board. Bailey contends, adopting the brief of amicus curiae, that the U.S. Commission violated the Ex Post Facto Clause of the Fifth Amendment to the Constitution by denying him parole based on factors that were impermissible under the D.C. Board’s policy in place at the time of his offense, but permissible under the U.S. Commission’s subsequent policy. Because the U.S. Commission properly applied the D.C. Board’s earlier policy, I concur in holding that Bailey’s ex post facto challenge fails. Because that holding disposes of the issue Bailey has presented, I dissent from the court’s alternative analysis prematurely announcing a broader ex post facto principle for future cases.
I.
In interpreting the authority of the D.C. Board of Parole, the District of Columbia Court of Appeals has held that when acting pursuant to the 1987 Regulations, the Board retains discretion under D.C.Code § 24-204(a) to depart from numerical recommendations set forth in the regulations. See McRae v. Hyman, 667 A.2d 1356, 1359-61 (D.C.1995); Davis v. Henderson, 652 A.2d 634, 635-38 (D.C.1995); White v. Hyman, 647 A.2d 1175, 1180 (D.C.1994). This court has adopted the D.C. Court of Appeals’s interpretation of D.C.Code § 24-204(a) and the parole system established in the D.C. regulations. See Phillips v. Fulwood, 616 F.3d 577, 582 (D.C.Cir.2010); Ellis v. Dist. of Columbia, 84 F.3d 1413, 1420 (D.C.Cir.1996). Although the cited D.C. cases either do not discuss the Board’s 1991 Guideline or do so as to other issues, the Guideline merely provided definitions for certain terms in the 1987 Regulations and did not purport to limit the D.C. Board’s discretion under the 1987 Regulations.
Therefore, essentially for the reasons stated by the court, I join the court in holding that because “the [U.S. Commission]^ decisions were a permissible exercise of its statutory discretion, which was cabined neither by the 1987 Guidelines nor by the 1991 Policy Guideline,” Op. 131-32, Bailey’s ex post facto challenge fails.
II.
The court insists on going further, concluding alternatively that a prisoner can never present a claim under the Ex Post Facto Clause where a parole agency cites *138 the correct regulation or guidelines. See Op. 132, 134-37. The court normally “do[es] not reach out to decide” constitutional issues when the appeal does not require it. Pub. Citizen Health Research Grp. v. Tyson, 796 F.2d 1479, 1507 (D.C.Cir.1986). The court’s reason for doing so today is to express its view that Sellmon v. Reilly, 551 F.Supp.2d 66, 96 (D.D.C.2008), misstates the law. Op. 135, 136-37. In Sellmon, the district court was “unpersuaded that the [Commission’s] reference to the 1987 Regulations, standing alone, is sufficient to bar an ex post facto challenge.” 551 F.Supp.2d at 96 (emphasis added). This court’s categorical rejection of Sellmon goes far beyond the facts of Bailey’s case. In denying parole, the Commission did not simply reference the 1987 Regulations, it correctly applied them. That conclusion fully resolves the issue Bailey has presented in this appeal.
The court’s alternative conclusion is troubling for two reasons. First, it may not be correct, and the factual record and briefing in this case did not focus on the issue so as to allow for careful consideration. Second, the policy considerations on which the court relies are dubious at best. The more prudent course would be to leave consideration of this issue for a case that actually presented it.
1. The Ex Post Facto Clause prohibits the passing of an “ex post facto Law.” U.S. CONST, art. I, § 9, cl. 3. In the parole context, this prohibition applies to new regulations and policy guidelines that “create[] a significant risk of prolonging [an inmate’s] incarceration.” Garner v. Jones, 529 U.S. 244, 251, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000); see Phillips, 616 F.3d at 580. The analysis involves two questions: did the parole agency apply a retroactive policy (the retroactivity question), and, if so, did the retroactive application carry a significant risk of increased punishment (the risk question). Answering the retroactivity question will generally be easy when the parole agency states that it is applying a later policy. In such cases, the court will only have to answer the risk question, which requires the court to conduct “a searching comparison of the old and new” policies to determine whether application of the later policy “create[s] a significant risk” of lengthier incarceration. Fletcher v. Reilly, 433 F.3d 867, 879 (D.C.Cir.2006) (“Fletcher III”). The court’s alternative analysis speaks to the opposite situation, in which the parole agency denies parole using an analysis available under the new policy but not the old (thereby demonstrating a “significant risk” that applying the new policy will prolong incarceration) but claims to be applying the prospective policy only. That situation requires the court to answer the first question: which policy did the parole agency, in fact, apply?
In addressing the risk question, the Supreme Court’s ex post facto precedent has eschewed formalism. It has instructed courts to look at an agency’s “policy statements, along with the [agency’s] actual practices,” to determine “the manner in which it is exercising its discretion” under both policies, looking to “evidence drawn from the rule’s practical implementation.” Garner, 529 U.S. at 256, 120 S.Ct. 1362; see id. at 255, 120 S.Ct. 1362. “The controlling inquiry under Gamer is how the Board or the Commission exercises discretion in practice, and whether differences between the exercise of discretion in [the] two systems actually” create a significant risk of increased punishment. Fletcher III, 433 F.3d at 876-77. “[T]he question is one of practical effect,” not labels. Fletcher v. Dist. of Columbia, 391 F.3d 250, 251 (D.C.Cir.2004) (“Fletcher II ”). Thus, even if a later policy is facially similar to the one in place at the time of offense, courts are to scrutinize whether, in practice, the later *139 policy reflects a stricter implementation of statutory discretion. In Bailey’s case, the court has effectively answered that question in the negative, holding that, as exercised, the discretion is the same under both, and consequently there is no difference in the risk of punishment under the two regimes. See also Phillips, 616 F.3d at 582-83.
The court proceeds to answer the retro-activity question as well. With virtually no analysis of the Ex Post Facto Clause itself, the court opines that the parole agency’s characterization of its action is conclusive on the question of which policy was, in fact, applied. Thus, in the language of Sellmon, a simple “reference” to the correct policy, “standing alone,” is sufficient to bar an[y] ex post facto challenge. 551 F.Supp.2d at 96 (emphasis added). But if, as the Supreme Court has instructed, the risk question must take account of actual practice, then it is not clear why the retroactivity question categorically may not. The Ex Post Facto Clause prohibits “[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.” Colder v. Bull, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798) (Chase, C.J.); see Garner, 529 U.S. at 249-50, 120 S.Ct. 1362. It “forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred.” Weaver v. Graham, 450 U.S. 24, 30, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (emphasis added). When a parole agency prolongs incarceration using policy considerations that were not adopted until after the offense, it contravenes that prohibition regardless of the label it affixes to its decision. As the Supreme Court has explained, the Clause “safeguards a fundamental fairness interest in having the government abide by the rules of law it establishes to govern the circumstances under which it can deprive a person of his or her liberty or life.” Peugh v. United States, — U.S. -, 133 S.Ct. 2072, 2085, 186 L.Ed.2d 84 (2013) (quotation marks and alterations omitted). That purpose is not satisfied by a bare disavowal of any ex post facto violation.
Imagine a sentencing judge who considers aggravating factors enacted after the defendant’s offense, but concludes by stating “I applied the earlier sentencing law.” Or imagine a parole agency that changes the factors it will consider from A, B, C to X, Y, Z, then denies parole based only on the latter set of factors, but states that it applied the earlier policy. In those situations, it is unclear why mere averral of compliance with the Ex Post Facto Clause should override clear facts of the case to the contrary. The Clause “deals with substance, not shadows. Its inhibition was levelled at the thing, not the name. It intended that the rights of the citizen should be secure against deprivation for past conduct by legislative enactment, under any form, however disguised.” Weaver, 450 U.S. at 31 n. 15, 101 S.Ct. 960 (quoting Cummings v. Missouri, 71 U.S. (4 Wall.) 277, 325, 18 L.Ed. 356 (1866)). If the risk question requires an examination of “actual practices” and “practical effect,” why should the retroactivity question be blind to practical realities altogether? The court provides no answer. With no need to reach the question, the court relegates a core constitutional protection to an easily evaded formalism..
Granted, not every misapplication of a parole policy constitutes an ex post facto violation. Plaintiffs in the companion case, supra note 1, maintained that the improper application of a permissible factor amounted to an “unwritten” policy change, and thereby violated the Ex Post Facto Clause. An incorrect application of a prospective policy is not necessarily an ex post facto violation. But neither is the prospec *140 tive policy necessarily the one that was applied, for purposes of the Clause, merely because of a statement to that effect by the parole agency. In some cases (and again, neither Bailey’s case nor the companion case require this court to decide which ones), the facts may be sufficiently clear to establish that a later rule was applied, despite an agency’s contrary statement.
2. How, then, does the court reach its conclusion that a bare assertion cures any possible ex post facto violation? Two policy reasons. First, the court suggests that' the Clause is an unnecessary prophylactic because prisoners have other “avenues to challenge the unlawful denial of a request for parole.” Op. 135. The availability of other legal theories or causes of action is irrelevant to the meaning of the Ex Post Facto Clause. The Clause exists to prevent retroactive punishment, period. See Peugh, 133 S.Ct. at 2081 (quoting Colder, 3 U.S. (3 Dali.) at 390). It does not exist merely to prevent retroactive punishment that is not prevented by other means. Would the majority hold that the Fourth Amendment does not prohibit unreasonable searches and seizures that can be challenged under state tort law? Moreover, the court’s premise may be wrong, as the court’s citations cast doubt on the' availability of other remedies. See Op. 135-36 (citing Doe v. U.S. Parole Comm’n, 602 Fed.Appx. 530 (D.C.Cir.2015), where the court highlights the barriers to bringing a direct appeal, federal habeas, state habeas, and claims under 42 U.S.C. § 1983 and the Administrative Procedure Act). Even if other legal theories are available, the scope of relief may depend on whether or not a claim is constitutional. See, e.g., 42 U.S.C. §§ 1983,1988(b).
Second, the court is concerned that enforcing the Ex Post Facto Clause despite absolving boilerplate might “freeze in time” the Board’s discretion. Op. 136-37 (quoting Gamer, 529 U.S. at 259, 120 S.Ct. 1362 (Scalia, J., concurring in part in the judgment)). It is not clear what this means here. Surely the court does not mean to suggest that a parole agency is free to apply a later policy when doing so significantly increases the risk of incarceration. The Supreme Court and this court have held that parole agencies cannot retroactively. apply stricter regulations or guidelines, even when their statutory discretion is unchanged. See Peugh, 133 S.Ct. at 2081, 2086; Garner, 529 U.S. at 253-55, 120 S.Ct. 1362; Phillips, 616 F.3d at 580; Fletcher III, 433 F.3d at 876-77; Fletcher II, 391 F.3d at 251. In fact, the “freezing” concern comes from a separate opinion criticizing that conclusion in Garner, see Gamer, 529 U.S. at 257-59, 120 S.Ct. 1362 (Scalia, J., concurring in part in the judgment); but as the court acknowledges, see Op. 134-35, that bridge has been crossed. Perhaps the court’s “freezing” concern is targeted at the “unwritten” policy theory advanced in the companion case. But rejecting that theory does not require the court’s broad alternative analysis. Where a parole agency applies a later policy retrospectively, no concern for “freezing” the agency’s discretion can overcome the Supreme Court’s holding in Gamer and our cases applying it.
The court has no reason to make new ex post facto law on such a weak foundation. As a result of our holding that the D.C. 1987 Regulations and 1991 Guideline do not constrain the U.S. Commission’s discretion, no prisoner could reasonably anticipate success in filing an action like Bailey’s because it will be clear that the U.S. Commission’s exercise of reasoned discretion is not constrained under the earlier D.C. policy.
The court’s alternative analysis thus bears all the worst hallmarks of an adviso *141 ry opinion. See United States v. Fruehauf 365 U.S. 146, 157, 81 S.Ct. 547, 5 L.Ed.2d 476 (1961); Alabama State Fed’n of Labor v. McAdory, 325 U.S. 450, 461-62, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945) (collecting cases). Lacking the focus that an actual controversy presents, the court adopts an ill-considered position with implications well beyond the facts of Bailey’s case and possibly beyond the parole context altogether. The parties have barely briefed this issue, instead treating the ex post facto question as turning on whether the factors on which the U.S. Commission relied were permissible under the D.C. Parole Board’s 1987 Regulations and 1991 Guideline. See McBride v. Merrell Dow & Pharm., Inc., 800 F.2d 1208, 1211 (D.C.Cir.1986). The court answered that question in the affirmative, and I concur. Because the court’s alternative analysis is unnecessary (and unpersuasive), I respectfully dissent from Part II.B of the court’s opinion (and the sentences introducing it on page 7) and would leave the operation of the retroactivity question for another day.

. Gambrell, et al. v. Fulwood, No. 13-5239 (D.C.Cir. July 14, 2015).