PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

      *Plaintiff-Appellant,*

v.

DERRICK E. LEWIS,

      *Defendant-Appellee.*

No. 09-4343

UNITED STATES OF AMERICA,

      *Plaintiff-Appellee,*

v.

DERRICK E. LEWIS,

      *Defendant-Appellant.*

No. 09-4474

Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
Henry E. Hudson, District Judge.
(3:08-cr-00006-HEH-1)

Argued: March 24, 2010

Decided: May 27, 2010

Before KING and GREGORY, Circuit Judges, and
Joseph R. GOODWIN, Chief United States District Judge
for the Southern District of West Virginia,
sitting by designation.

Affirmed by published opinion. Judge King wrote the majority opinion, in which Judge Gregory joined. Judge Goodwin wrote a separate opinion concurring in part and dissenting in part.

---

**COUNSEL**

**ARGUED**: David Brian Goodhand, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellant/Cross-Appellee. Paul Geoffrey Gill, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellee/Cross-Appellant. **ON BRIEF**: Dana J. Boente, United States Attorney, Alexandria, Virginia, Kevin C. Nunnally, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellant/Cross-Appellee. Michael S. Nachmanoff, Federal Public Defender, Alexandria, Virginia, for Appellee/Cross-Appellant.

---

**OPINION**

KING, Circuit Judge:

Derrick E. Lewis appeals from his conviction and sentence in the Eastern District of Virginia for unlawful possession of a firearm by a convicted felon, in contravention of 18 U.S.C. § 922(g)(1). After Lewis committed the offense of conviction, but before he was sentenced, the Sentencing Guidelines were amended to include a higher base offense level for the offense, resulting in an advisory Guidelines range that was nearly double that calculated under the Guidelines in effect at the time of his offense. After determining that application of the amended 2008 Guidelines would contravene the Ex Post Facto Clause of the Constitution, the district court applied the 2005 Guidelines in effect at the time of the offense of convic-

tion. *See United States v. Lewis*, 603 F. Supp. 2d 874 (E.D. Va. 2009). The Government has appealed from the court's Ex Post Facto Clause ruling. Lewis has cross-appealed, contending that the court erred in denying his motion to suppress the firearm underlying his conviction. As explained below, we reject both contentions and affirm.

I.

A.

At approximately 11:00 p.m. on May 16, 2006, Lewis was sitting in the driver's seat of a vehicle parked in a residential area in Richmond, Virginia.[1] Three officers tasked with searching for illegal firearms — Richmond Police Officer Kevin Mills and two officers of the Virginia State Police — parked their cruiser on the opposite side of the street from Lewis's car. Immediately thereafter, other officers arrived on the scene, and several officers approached Lewis's vehicle. At that point, one of the officers looked into the vehicle's passenger window and observed an open beer bottle in the front portion of the vehicle. Upon learning of the open beer bottle, Officer Mills approached the driver-side window and requested Lewis's identification. When Lewis rolled down his window to comply, Officer Mills detected "a faint odor of burnt marijuana." J.A. 42.[2] Mills immediately asked Lewis to exit the vehicle, but he refused; Officer Mills then removed Lewis from the vehicle. About thirty to sixty seconds had elapsed between the officers' arrival and Lewis's removal from the car.

After placing Lewis in handcuffs, the officers observed a

---

[1]Because the district court denied Lewis's motion to suppress, we view the evidence in the light most favorable to the Government. *See United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008).

[2]Citations herein to "J.A. ____" refer to the contents of the Joint Appendix filed by the parties in this appeal.

semiautomatic, nine-millimeter handgun in plain view on the front driver-side floorboard of Lewis's vehicle. The firearm was loaded and had an extended, high-capacity magazine. Officer Mills then checked Lewis's criminal history and ascertained that he was a convicted felon. Because Virginia law prohibits felons from possessing firearms, Lewis was placed under arrest.

B.

On September 3, 2008, a superseding indictment was returned in the Eastern District of Virginia, charging Lewis with a single count of unlawfully possessing a firearm, in contravention of 18 U.S.C. § 922(g)(1) and (9).[3] On October 27, 2008, Lewis moved to suppress the evidence obtained from his vehicle. At a suppression hearing conducted on October 29, 2008, the district court denied the suppression motion. As an initial matter, the court concluded that the officers did not need any form of suspicion in order to approach Lewis's parked vehicle and ask questions. The court then specifically credited the testimony of Officer Mills, observing that only Mills had observed the entire encounter and that none of the defense witnesses' testimony was "necessarily inconsistent with that of" Mills. J.A. 133.

On the sequence of events leading to Lewis's arrest, the district court found that Officer Mills knew that another officer had observed an open beer container inside the vehicle and that Mills had detected the odor of marijuana emanating from the vehicle when Lewis rolled down his window. According to the court, the marijuana odor alone provided "sufficient probable cause to search the vehicle. Certainly, it

---

[3]Section 922(g) of Title 18 prohibits any person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year," 18 U.S.C. § 922(g)(1), or "who has been convicted in any court of a misdemeanor crime of domestic violence," *id.* § 922(g)(9), from possessing a firearm in or affecting interstate commerce.

was adequate to require the defendant to step out and to detain him during the course of that search." J.A. 135. Accordingly, the court ruled that the contested search and seizure was consistent with the Fourth Amendment and denied the motion to suppress.

C.

Following a one-day jury trial, conducted on December 4, 2008, Lewis was convicted of possession of a firearm by a convicted felon, in contravention of 18 U.S.C. § 922(g)(1).[4] Thereafter, on January 28, 2009, the probation officer prepared and submitted a presentence investigation report (the "PSR"), applying the 2008 edition of the Guidelines. That edition called for a base offense level of 20, which — when coupled with Lewis's criminal history category of III — resulted in an advisory Guidelines range of 41 to 50 months of imprisonment. The PSR's base offense level calculation was predicated on section 2K2.1(a)(4)(B)(i) of the 2008 edition of the Guidelines, which mandates an offense level of 20 if the offense involved a "semiautomatic firearm that is capable of accepting a large capacity magazine." That provision had been added to the Guidelines as part of Amendment 691, effective November 1, 2006 — after Lewis committed the offense of conviction. Thus, in a section of the PSR entitled "Ex Post Facto Consideration," the probation officer noted that the 2005 Guidelines, which were in effect at the time of the offense of conviction, would prescribe a base offense level of 14 and an advisory Guidelines range of 21 to 27 months, rather than the 41- to 51-month range prescribed by the 2008 edition. J.A. 226.

At the sentencing hearing on March 6, 2009, Lewis objected to the PSR's application of the 2008 Guidelines, asserting that application thereof "essentially doubl[ed]" his

---

[4]The prosecution elected not to pursue the § 922(g)(9) aspect of the indictment. *See* Principal & Resp. Br. of Appellee 13.

applicable sentencing range, in contravention of the Ex Post Facto Clause. J.A. 151. In response, the Government maintained that the court's use of the amended 2008 Guidelines would not contravene the Ex Post Facto Clause, arguing that, after the Supreme Court rendered the Guidelines advisory in *United States v. Booker*, 543 U.S. 220 (2005), they were no longer "law" to which the Clause applies. Alternatively, the Government asked the court to vary upward to the sentencing range reflected in the 2008 Guidelines, asserting that the extended-capacity magazine possessed by Lewis posed "the same peril" to the community in 2006 as it did in 2008. J.A. 157.

By its opinion of March 16, 2009, the district court ruled that application of the 2008 Guidelines would contravene the Ex Post Facto Clause. *See United States v. Lewis*, 603 F. Supp. 2d 874 (E.D. Va. 2009). Beginning with what the Guidelines refer to as "General Application Principles," the court recognized that section 1B1.11 mandates use of the Guidelines in effect at the time of sentencing, unless the sentencing court "determines that use of [that edition] would violate the *ex post facto* clause of the United States Constitution." USSG § 1B1.11(b)(1) (2008). In that event, the Guidelines instruct the court to apply the unamended Guidelines in effect on the date the offense of conviction was committed. *See id.*

Turning to the merits of the Ex Post Facto Clause contention, the sentencing court concluded that application of the 2008 Guidelines in this case would result in a significant risk of an increased sentence, thereby contravening the Ex Post Facto Clause. *See Lewis*, 603 F. Supp. 2d at 879. The court acknowledged that it would be "nudged in the direction of the Guidelines" range if neither the PSR nor the arguments at sentencing yielded an "articulable basis to stray from the calculated guideline range." *Id.* Consequently, the court calculated Lewis's advisory sentencing range under the 2005 Guidelines, which were in effect at the time of the offense of conviction, and imposed a 27-month sentence.

The Government timely noticed its appeal of the district court's Ex Post Facto Clause ruling, and Lewis pursues a cross-appeal on the denial of his motion to suppress. We possess jurisdiction pursuant to 18 U.S.C. § 3742(b) and 28 U.S.C. § 1291.

## II.

In assessing a district court's decision on a motion to suppress, we review factual findings for clear error and legal determinations de novo. *See United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008). In so doing, we must construe the evidence in the light most favorable to the prevailing party, *see id.*, and give "due weight to inferences drawn from those facts by resident judges and law enforcement officers," *United States v. Humphries*, 372 F.3d 653, 657 (4th Cir. 2004) (internal quotation marks omitted). We review de novo questions of law, including whether the application of a Guidelines amendment contravenes the Ex Post Facto Clause. *See United States v. Nale*, 101 F.3d 1000, 1003 (4th Cir. 1996).

## III.

We confront two issues in these appeals. First, in No. 09-4474, Lewis maintains that the district court erred in denying his motion to suppress the evidence seized in conjunction with his arrest. Second, in No. 09-4343, the Government contends that the court erred at sentencing by concluding that the Ex Post Facto Clause required it to apply the Guidelines in effect in May 2006 when Lewis committed the offense of conviction. As explained below, we reject both contentions and affirm.

## A.

Lewis contends on appeal that the district court erred in denying his motion to suppress the firearm seized at the time

of his arrest. According to Lewis, he was unconstitutionally "seized" by the officers before Officer Mills detected marijuana in his vehicle. Lewis was not "seized," however, when the officers approached his vehicle. *See United States v. Weaver,* 282 F.3d 302, 309 (4th Cir. 2002) ("It is axiomatic that police may approach an individual on a public street and ask questions without implicating the Fourth Amendment's protections."). The officers were thus entitled to approach Lewis, who was sitting in his parked car, late at night. As they approached the vehicle, one of the officers related to Officer Mills that there was an open beer bottle in the vehicle. Mills then approached the driver-side window and asked Lewis for identification. When Lewis rolled down his window to comply, Mills smelled the odor of marijuana emanating from the vehicle. At that point, the officers possessed probable cause to search the vehicle, *see United States v. Humphries*, 372 F.3d 653, 658 (4th Cir. 2004), and they were entitled to order Lewis out of the vehicle while their search was accomplished, *see United States v. Sakyi*, 160 F.3d 164, 169 (4th Cir. 1998).

Moreover, Lewis has not established that the district court clearly erred in making the factual findings underlying its suppression ruling. Specifically, although the court found that the witnesses who testified on Lewis's behalf were credible, their testimony was not "necessarily inconsistent" with Officer Mills's version of events. J.A. 133. Moreover, the court was justified in relying on the testimony of Officer Mills because he had presented the most comprehensive account of Lewis's arrest. In short, given the court's unique opportunity and ability to assess the credibility of the witnesses, we are unable to say that it clearly erred in crediting Officer Mills's testimony. Thus, the court did not err in denying the motion to suppress.

B.

By its appeal, the Government maintains that the district court erred at sentencing when it ruled that the Ex Post Facto

Clause required it to apply the Sentencing Guidelines in effect when Lewis committed the offense of conviction in May 2006. The Guidelines direct a sentencing court to "use the Guidelines Manual in effect on the date that the defendant is sentenced," unless the court determines that to do so "would violate" the Ex Post Facto Clause of the Constitution. USSG § 1B1.11(b)(1).[5] In that event, the court is to "use the Guidelines Manual in effect on the date that the offense of conviction was committed." *Id.*[6]

The Ex Post Facto Clause prohibits retroactive laws that create a "significant risk" of increased punishment for a crime. *Garner v. Jones*, 529 U.S. 244, 255 (2000). In *Miller v. Florida*, the Supreme Court determined that the Ex Post Facto Clause barred the retroactive application of Florida's sentencing guidelines, when such application would have resulted in a longer sentence than the offender would have received at the time of the offense. *See* 482 U.S. 423, 435-36 (1987). After *Miller* was decided, several of our courts of appeals likewise concluded that the Ex Post Facto Clause precluded retroactive application of severity-enhancing amendments to the federal Sentencing Guidelines. *See, e.g.*, *United States v. Seacott*, 15 F.3d 1380, 1385-86 (7th Cir. 1994); *United States v. Morrow*, 925 F.2d 779, 782-83 (4th Cir. 1991). Accordingly, sentencing courts were prohibited from applying Guidelines amendments at sentencing that increased the punishment for an offense after its commission.

In 2005, however, the *Booker* decision of the Supreme Court rendered the Guidelines advisory. *See United States v. Booker*, 543 U.S. 220, 245 (2005). Post-*Booker*, the courts of

---

[5]The Ex Post Facto Clause of the Constitution provides that "[n]o . . . ex post facto Law shall be passed." U.S. Const. art. I, § 9, cl. 3.

[6]Pursuant to the so-called "one book" rule, the sentencing court must use an entire Guidelines Manual in effect on a particular date, rather than combine provisions drawn from different editions. *See* USSG § 1B1.11(b)(2).

appeals have disagreed on whether the Ex Post Facto Clause prohibits a sentencing court from retroactively applying severity-enhancing Guidelines amendments. In *United States v. Turner*, the D.C. Circuit recognized this disagreement and ruled that such retroactive application contravenes the Ex Post Facto Clause. *See* 548 F.3d 1094, 1100 (D.C. Cir. 2008). Two years earlier, the Seventh Circuit had concluded, in *United States v. Demaree*, that the Ex Post Facto Clause does not bar retroactive application of severity-increasing Guidelines amendments. *See* 459 F.3d 791, 795 (7th Cir. 2006). Although we have previously recognized this circuit split, we have not had occasion to rule on the issue. *See, e.g.*, *United States v. Rooks*, 596 F.3d 204, 214 n.11 (4th Cir. 2010).[7]

Because the Guidelines represent the crucial "starting point," as well as the "initial benchmark," for the regimented sentencing process employed by the sentencing courts within this Circuit, *see Gall v. United States*, 552 U.S. 38, 49 (2007), an increased advisory Guidelines range poses a significant risk that a defendant will be subject to increased punishment. Accordingly, as explained below, we join the D.C. Circuit in concluding — as did the district court — that the retroactive application of severity-enhancing Guidelines amendments contravenes the Ex Post Facto Clause. *See Turner*, 548 F.3d at 1100.

1.

It is undisputed that the Guidelines provision at issue in this appeal was upwardly amended after Lewis committed the offense of conviction. Under the 2005 Guidelines in effect at the time of Lewis's May 2006 arrest, his conduct — posses-

---

[7]In post-*Booker* decisions, we have assumed without deciding that the Ex Post Facto Clause prohibits the application of upwardly revised Guidelines. *See, e.g.*, *United States v. Iskander*, 407 F.3d 232, 242 n.8 (4th Cir. 2005); *United States v. Sinclair*, 293 Fed. App'x 235, 236 (4th Cir. 2008) (per curiam) (unpublished).

sion of a semiautomatic firearm capable of accepting an extended-capacity magazine — corresponded with a maximum base offense level of 14. *See* USSG § 2K2.1(a)(6)(A) (2005). Amendment 691, which took effect on November 1, 2006, created a higher base offense level for an offense involving a "semiautomatic firearm that is capable of accepting a large capacity magazine." Thus, under the 2008 Guidelines in effect at the time of his sentencing, Lewis had a base offense level of 20. *See* USSG § 2K2.1(a)(4)(B)(i) (2008). As applied to Lewis, therefore, the 2008 Guidelines resulted in a sentencing range of 41 to 51 months — nearly double the 21- to 27-month range under the otherwise applicable 2005 Guidelines.

2.

Given that the 2008 Guidelines retroactively increased the penalty for Lewis's conduct, the question we must resolve is whether application of the amended 2008 Guidelines would have resulted in a "significant" — rather than "speculative and attenuated" — risk of an increased sentence. *Garner v. Jones*, 529 U.S. 244, 251-55 (2000). Under *Garner*, Lewis was not required to show that the amended Guidelines on their face — i.e., "by [their] own terms" — would have contravened the Ex Post Facto Clause. *Id.* at 255. Rather, Lewis was permitted to demonstrate that retroactive application of the amended Guidelines, as applied to him through "practical implementation," posed a "significant risk of increasing his punishment." *Id.*; *see also United States v. Turner*, 548 F.3d 1094, 1100 (D.C. Cir. 2008) ("The proper approach is therefore to conduct an 'as applied' constitutional analysis, not the sort of facial analysis conducted [by the Seventh Circuit] in *Demaree*." (internal citation omitted)). Thus, we need only determine whether, practically speaking, application of the 2008 edition of the Guidelines would have created a significant risk of increased punishment for Lewis.[8]

---

[8]Our distinguished dissenting colleague primarily relies on the Seventh Circuit's decision in *Demaree*, as well as this Court's more recent decision

The Government concedes that Guidelines calculations may "nudge[ ]" a court "toward the sentencing range" and may "possibly encourage[ ]" courts to impose within-Guidelines sentences. Reply & Resp. Br. of Appellant 24, 26 (internal quotation marks omitted). Nevertheless, echoing the Seventh Circuit's decision in *Demaree*, the Government maintains that a sentencing court's ultimate freedom to impose a non-Guidelines sentence is "'unfettered.'" *Id.* at 24 (quoting *Demaree*, 459 F.3d at 795). Framing the issue as whether the Guidelines require or forbid a specific sentence, the Government contends that the Guidelines' fully advisory nature means that they "simply do *not* have the preeminent and dominant role that [Lewis] claims for them." *Id.* at 21 (internal quotation marks omitted). In other words, the Government believes that the Guidelines serve merely as "advice for a district court's initial consideration." *Id.* at 13.

Put simply, we are obliged to disagree with and reject the Government's position. Its characterization of the Guidelines after *Booker* simply does not comport with either the Supreme Court's precedent or our own. In *Gall v. United States*, the Supreme Court emphasized that "a district court should begin

---

in *United States v. Dean*, __ F.3d __, No. 08-4439 (4th Cir. May 5, 2010), to conclude that the Ex Post Facto Clause is not implicated in this case because the advisory Guidelines have been stripped of any legal force. *See post* at 18-19. As explained herein, that conclusion would only foreclose a facial challenge under the Ex Post Facto Clause. In this appeal, however, Lewis pursues an as-applied contention, maintaining that application of the 2008 Guidelines to his circumstances would result in a significant risk of an increased sentence. *See Garner*, 529 U.S. at 255. The dissent also relies on *Dean* for the uncontroversial point that sentencing judges possess substantial discretion to deviate from the Guidelines. Once again, while that proposition may mean that the Guidelines lack any facially binding effect as a matter of law, it does not undercut the proposition that application of an upwardly amended Guidelines provision will pose a significant risk of an increased sentence. Indeed, as Judge Wilkinson recognized in *Dean*, "the Guidelines continue to play an important role in the sentencing process." *Dean*, slip op. at 8.

all sentencing proceedings by correctly calculating the applicable Guidelines range." 552 U.S. 38, 49 (2007). Thus, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Id.* Indeed, the Court has used a sentencing court's "fail[ure] to calculate (or improperly calculating) the Guidelines range" as a paradigmatic example of a "significant procedural error." *Id.* at 51.

In our decisions post-*Booker*, we have described the importance of the Guidelines in equally strong terms. Thus, we have emphasized that "[a] sentence based on an improperly calculated guidelines range will be found unreasonable and vacated." *United States v. Abu Ali*, 528 F.3d 210, 260 (4th Cir. 2008). Furthermore, because a correct calculation of the advisory Guidelines range is the crucial "starting point" for sentencing, an error at that step "infects all that follows at the sentencing proceeding, including the ultimate sentence chosen by the district court." *United States v. Diaz-Ibarra*, 522 F.3d 343, 347 (4th Cir. 2008). And, if a sentencing court commits a significant procedural sentencing error — as it would, for example, if it mistakenly applied the wrong edition of the Guidelines — our practice is to vacate and remand for resentencing before reviewing the sentence for substantive reasonableness. *See United States v. Carter*, 564 F.3d 325, 330 n.4 (4th Cir. 2009).

Notably, the standard of review we utilize in sentencing appeals emphasizes the importance of the advisory Guidelines. First, although a sentencing court is not entitled to presume that a within-Guidelines sentence is reasonable, an appellate court may accord a presumption of reasonableness to such a sentence. *See United States v. Raby*, 575 F.3d 376, 381 (4th Cir. 2009). Second, although a sentencing court retains significant flexibility to impose a variance sentence outside of the advisory Guidelines range, the court's stated reasons for doing so must be "sufficiently compelling to support the degree of the variance." *United States v. Morace*, 594

F.3d 340, 346 (4th Cir. 2010) (internal quotation marks omitted). As a result, a "major departure" from the advisory Guidelines range must be "supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50.

Because our standard of review is defined — at least in part — by reference to the advisory Guidelines range, it is unsurprising that we have required the sentencing courts to be faithful to the Guidelines in calculating that range. Nor is it surprising that, even after the Supreme Court rendered the Guidelines advisory in *Booker*, a significant portion of our sentencing appeals — including those pursued by the Government — have concerned procedural sentencing errors under the Guidelines. In fact, in the five years since *Booker* was decided, we have issued at least eight published decisions vacating sentences on the basis of procedural error. *See, e.g.*, *United States v. Llamas*, __ F.3d ___, No. 09-4045, slip op. at 11-13 (4th Cir. Mar. 17, 2010) (sentencing court provided insufficient explanation for Guidelines enhancement); *United States v. Mendoza-Mendoza*, 597 F.3d 212, 219 (4th Cir. 2010) (sentencing court improperly accorded advisory Guidelines "quasi-mandatory effect"). Such appeals, which are wholly concerned with the calculation and implementation of the Guidelines, confirm the important practical impact that they have on sentences.

The federal sentencing statistics also emphasize the practical effect of the advisory Guidelines on the decisions of sentencing courts. *See Turner*, 548 F.3d at 1099 ("It is hardly surprising that most federal sentences fall within Guidelines ranges even after *Booker* — indeed, the actual impact of *Booker* on sentencing has been minor."). The Sentencing Commission's statistics show, for example, that 81.9 percent of sentences imposed within this Circuit in fiscal year 2009 fell within either the advisory Guidelines range or a government-sponsored departure below the Guidelines range. *See* U.S. Sent'ing Comm., Final Quarterly Data Report: Fiscal Year 2009, at 2-3. Moreover, the mean length of post-*Booker*

sentences for unlawful firearm possession on the national level has remained nearly constant, as have the deviations between the mean sentence imposed and the average minimum range under the Guidelines. *See id.* at 34.

The foregoing serves to undercut the Government's characterization of the advisory Guidelines sentencing range as merely providing helpful advice — akin to a reference manual — for a sentencing court's perusal. On the contrary, we are more persuaded by the D.C. Circuit's description of the Guidelines as an important "anchor" for a sentencing judge. *See Turner*, 548 F.3d at 1099. And like that court, we too are unconvinced by the Seventh Circuit's contrary reasoning in *Demaree*. *See* 459 F.3d at 795. That ruling was predicated on two propositions that are belied by precedent: (1) that the Ex Post Facto Clause "should apply only to laws and regulations that bind rather than advise"; and (2) that sentencing judges post-*Booker* have "unfettered" discretion to sentence outside of the Guidelines range, subject only to "light appellate review." *Id.*[9]

First, the Seventh Circuit in *Demaree* took an overly narrow view of the scope of the Ex Post Facto Clause, reasoning that the defendant's claim failed in light of the discretion conferred on a sentencing court to impose non-Guidelines sentences. *See* 459 F.3d at 795. In *Garner*, however, the Supreme Court "foreclosed [a] categorical distinction between a measure with the force of law," on the one hand, and discretionary guidelines, on the other. *See Fletcher v. Reilly*, 433 F.3d 867,

---

[9]In *Demaree*, the Seventh Circuit also concluded that it would be futile to prohibit retroactive application of amendments to the Guidelines, reasoning that a sentencing court could simply consult the amended Guidelines provision as part of its consideration of the 18 U.S.C. § 3553(a) sentencing factors. *See* 459 F.3d at 795. Because this appeal does not concern the district court's application of the § 3553(a) factors, we need not resolve this issue. Nevertheless, we join the D.C. Circuit in "reject[ing] the idea that district judges will misrepresent the true basis for their actions." *Turner*, 548 F.3d at 1099.

876 (D.C. Cir. 2006) (internal quotation marks omitted); *see also Garner*, 529 U.S. at 251. With regard to an "as applied" challenge, such as that at issue here, the question is not whether the sentencing courts retain discretion under the Guidelines. *See Turner*, 548 F.3d at 1100; *see also Fletcher*, 433 F.3d at 876 ("[T]he existence of discretion is not dispositive."). Instead, the proper approach is to assess how the sentencing courts exercise their "discretion in practice," and whether that exercise of discretion creates a "significant risk" of prolonged punishment. *Fletcher*, 433 F.3d at 876-77.

Our second point of disagreement with *Demaree's* analysis is related to the first, in that the Seventh Circuit's description of the sentencing process — how a sentencing court exercises its discretion in practice — does not appear to comport with this Circuit's precedent. The district court in this case correctly observed that our Circuit "requires greater particularity in explaining the rationale for departing or varying from the Guidelines." *United States v. Lewis*, 603 F. Supp. 2d 874, 878 (E.D. Va. 2009).[10] According to *Demaree*, a sentencing court in the Seventh Circuit need only "*consider* the guidelines," before exercising its "unfettered" discretion to assign a sentence outside of the Guidelines range. 459 F.3d at 795 (emphasis added). Under our precedent, however, simply "considering" the Guidelines is insufficient. Rather, the court must correctly calculate the advisory Guidelines range, and it must provide an adequate explanation of how it arrived at that

---

[10]The district court also concluded that Lewis would specifically be "disadvantaged by the more onerous Guidelines in effect at the time of his sentencing." *Lewis*, 603 F. Supp. 2d at 879. As the court explained, any variance or departure is made from the final advisory calculation of the Guidelines. *See id.* The higher sentencing range that would result from retroactive application of Guidelines amendments would therefore disadvantage a defendant even where the sentencing court exercises its discretion to sentence outside of the Guidelines range. As our distinguished former colleague Judge Williams aptly explained, the Guidelines calculation "infects all that follows" at sentencing, "including the ultimate sentence chosen by the district court." *Diaz-Ibarra*, 522 F.3d at 347.

calculation. *See United States v. Wilkinson*, 590 F.3d 259, 270 (4th Cir. 2010). Finally, our appellate review of a sentence could be described as "light" only insofar as the sentencing court commits no procedural error, because a court's failure to properly calculate the advisory sentencing range is a significant procedural error that requires us to vacate the ultimate sentence. *See Abu Ali*, 528 F.3d at 260. In other words, a properly calculated Guidelines range is a precondition of appellate review of a sentence's substantive reasonableness.

In sum, given the importance our precedent places on the proper calculation of the advisory Guidelines range, the retroactive application of an upwardly amended advisory sentencing range poses a significant risk of an increased sentence. And Lewis was not required to "show definitively" that he would have received a higher sentence had the sentencing court utilized the amended 2008 Guidelines edition. *Turner*, 548 F.3d at 1100. It was sufficient that he show that application of the 2008 edition "created a substantial risk" that his sentence would be more severe. *Id.* He has made that showing, and there is no reason for us to disturb the district court's decision to apply the Guidelines in effect when Lewis committed the offense of conviction.[11]

## IV.

Pursuant to the foregoing, we reject the appellate contentions advanced by Lewis and the Government, and affirm Lewis's conviction and sentence.

*AFFIRMED*

---

[11]A sentencing court remains free, of course, within the parameters of our review for substantive reasonableness, to impose a sentence above or below the properly calculated advisory Guidelines range. We simply recognize that, in these circumstances, the retroactive application of an enhanced Guidelines provision contravenes the Ex Post Facto Clause by exposing Lewis to a significant risk of an increased sentence.

GOODWIN, Chief District Judge, concurring in part and dissenting in part:

Although I agree with my colleagues on the motion to suppress issue, I cannot join the ex post facto aspect of the majority opinion. The majority holds that the retroactive application of a revised Sentencing Guideline range that results in a higher recommended sentence violates the Constitution's ex post facto prohibition. In so doing, the majority ignores the reality that the Guidelines lack legal force. It also creates a constitutional contradiction by ignoring the Sixth Amendment implications of treating the Guidelines as anything more than advisory. Therefore, I respectfully dissent.

I.

"[T]he Guidelines were stripped of legal force" in *United States v. Booker. United States v. Dean*, __ F.3d __, No. 08-4439, slip op. at 6 (4th Cir. May 5, 2010). Accordingly, the Constitution's ex post facto prohibition cannot apply to them.

A.

The Ex Post Facto Clause applicable to the federal government provides, "No . . . ex post facto Law shall be passed." U.S. CONST. art. I, § 9, cl. 3.[1] By those terms, a provision must be or have the effect of "Law" to implicate the constitutional provision. *See Stogner v. California*, 539 U.S. 607, 611 (2003) ("[T]he Clause protects liberty by preventing governments from enacting *statutes* with 'manifestly *unjust* and *oppressive*' retroactive effects." (quoting *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 391 (1798)) (first emphasis added)); *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995) ("[T]he

---

[1]The Constitution contains two provisions prohibiting ex post facto laws. The provision applicable to the federal government is in Article I, section 9. The provision that applies to the States is in Article I, section 10.

Clause is aimed at *laws* that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" (quoting *Collins v. Youngblood*, 497 U.S. 37, 41 (1990)) (emphasis added)).

The Guidelines, however, are not law and do not have the effect of law. I agree with the government that the Guidelines "are *not* a legal framework that limits sentencing courts, but, rather simply advice for a judge's consideration." Br. of Appellant 13. By definition, therefore, the Guidelines cannot implicate the Ex Post Facto Clause. *See United States v. Demaree*, 459 F.3d 791, 795 (7th Cir. 2006) ("[T]he ex post facto clause should only apply to laws and regulations that bind rather than advise[.]").

1.

In *Booker*, the Supreme Court declared that, under the Sixth Amendment, "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *United States v. Booker*, 543 U.S. 220, 244 (2005). Consequently, the Court held that the Sixth Amendment's "jury trial requirement is not compatible with the [Sentencing Reform] Act as written." *Id.* at 248.

As a remedy, the Supreme Court "convert[ed] the Guidelines from binding law to an advisory document." *Dean*, slip op. at 6. Excised of their legal force, the Guidelines must be read as mere advice that recommends, rather than law that requires, that a district court impose a particular sentence. *See Booker*, 543 U.S. at 233 ("If the Guidelines as currently written could be read as *merely advisory provisions that recommended, rather than required*, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment." (emphasis added)); *see also United States v. Benkahla*, 530 F.3d 300,

312 (4th Cir. 2008) ("Sentencing judges may find facts relevant to determining a Guidelines range by a preponderance of the evidence, so long as that Guidelines sentence is treated as advisory and falls within the statutory maximum authorized by the jury's verdict.").

But the majority fails to follow this constitutional mandate. *See Ante* at 12 ("[W]e are obliged to disagree with and reject the Government's position" that the Guidelines "serve merely as 'advice for a district court's initial consideration.'" (quoting Br. of Appellant 13)). Relying upon the D.C. Circuit's characterization of the Guidelines as an "important 'anchor' for a sentencing judge," the majority necessarily concludes that the Guidelines are more of a requirement for district courts to follow than advice to be considered. *Id.* at 15 (quoting *United States v. Turner*, 548 F.3d 1094, 1099 (D.C. Cir. 2008)). The majority thus gives more weight to the Guidelines than the Sixth Amendment permits. Additionally, by recognizing that the Guidelines can implicate the Ex Post Facto Clause, the majority creates a constitutional contradiction: the Guidelines carry legal force under one part of the Constitution (the Ex Post Facto Clause), but not under another (the Sixth Amendment).

### 2.

Of course, sentencing guidelines with a binding, legal effect would compel the majority's conclusion. In *Miller v. Florida*, the Supreme Court addressed the constitutionality of the revised Florida sentencing guidelines law. 482 U.S. 423 (1987). At the time the defendant, Miller, committed the applicable offense, the Florida sentencing guidelines provided that he be sentenced to a term of 3 1/2 to 4 1/2 years in prison. The State of Florida revised its guidelines before his sentencing, however, which changed Miller's sentencing range to between 5 1/2 and 7 years in prison. The Supreme Court held that this retroactive change was an ex post facto violation.

The Court explained that Florida's guidelines raised ex post facto concerns because they had "the force and effect of law." *Miller*, 482 U.S. at 435. They did not "simply provide flexible 'guideposts' for use in the exercise of discretion," but instead "create[d] a high hurdle that [was required to] be cleared before discretion c[ould] be exercised." *Id.* For example, a sentencing judge could impose a departure sentence *only* after first finding "'clear and convincing reasons' that [were] 'credible,' 'proven beyond a reasonable doubt,' and 'not . . . a factor which has already been weighed in arriving at a presumptive sentence.'" *Id.* (quoting *State v. Mischler*, 488 So. 2d 523, 525 (Fla. 1986); *Williams v. State*, 492 So. 2d 1308, 1309 (Fla. 1986)). The mandatory character of the Florida guidelines virtually ensured that a defendant would receive a guidelines sentence. Therefore, the Court recognized, retroactively applying the Florida guidelines "directly and adversely affect[ed] the sentence" that a defendant would receive. *Id.*

Unlike the state guidelines in *Miller*, however, the post-*Booker* federal Guidelines do not carry the force and effect of law. They do not pose a "high hurdle" to the exercise of sentencing court discretion. They are, rather, "flexible guideposts" for the exercise of the sentencing court's discretion within the bounds of reason. Once a court has "considered" the Guidelines, it possesses complete discretion over the sentence imposed. *See Demaree*, 459 F.3d at 795 (concluding that a sentencing judge's "freedom to impose a reasonable sentence outside the [guideline] range is unfettered"). Finally, because they are advisory, retroactively applying post-*Booker* Guidelines cannot directly and adversely affect the sentence that a defendant will receive.

B.

The Supreme Court has explained, "Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental

restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Weaver v. Graham*, 450 U.S. 24, 30 (1981). At the time the Constitution was written, a chief objection to ex post facto laws was that they provided no notice to the public. Black-stone remarked that lawmaking must be done "in the most public and perspicuous manner; not like Caligula, who (according to Dio Cassius), [had] wr[itten] his laws in a very small character, and hung them up upon high pillars, the more effectually to ensnare the people." William Blackstone, 1 *Commentaries* \*46. "*All laws*," Blackstone wrote, "should be *therefore* made to commence *in futuro*, and be notified before their commencement . . . ." *Id.*

But the Supreme Court has concluded that the post-*Booker* Guidelines cannot present notice problems. In *Irizarry v. United States*, the Court addressed whether, after *Booker*, Federal Rule of Criminal Procedure 32(h) applies to every sentence that varied from the Guideline range.[2] 553 U.S. 708, 128 S. Ct. 2198 (2008). The Court concluded that it does not, explaining,

> Now faced with advisory Guidelines, neither the Government nor the defendant may place the same degree of reliance on the type of 'expectancy' that gave rise to a special need for notice . . . . Indeed, a sentence outside the Guidelines carries no pre-sumption of unreasonableness.

*Id.* at 2202.

---

[2]Federal Rule of Criminal Procedure 32(h) provides, "Before the court may depart from the applicable sentencing range on a ground not identi-fied for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is con-templating such a departure. The notice must specify any ground on which the court is contemplating a departure." The rule was enacted in response to *Burns v. United States*, 501 U.S. 129 (1991).

*Irizarry*'s holding is relevant here. Neither Lewis nor any defendant can make constitutional complaint when his advisory Guidelines range is changed, because he has no rightful expectation to a within-Guidelines sentence. His only expectation is that he will be sentenced within the provided *statutory* range. Therefore, the Guidelines do not present the notice problem that ex post facto laws necessarily present.[3]

## II.

Furthermore, I disagree with the arguments relied upon by the majority in concluding that the advisory Guidelines implicate the Ex Post Facto Clause. The majority builds its case on language that merely describes the remnants of the Guidelines regime. They then conclude that sentencing courts remain somehow bound to the Guidelines, simply because the Guidelines must be consulted and correctly calculated. Finally, the majority uses statistics to reach an unwarranted conclusion.

## A.

First, the majority emphasizes that the Supreme Court has labeled the Guidelines as the "starting point" and "initial benchmark" in sentencing proceedings. *Ante* at 10. Contrary to the majority's characterization, however, I believe this language was not intended to leave the Guidelines with any residual legal effect. Indeed, this Court has observed that "consideration of the Guidelines . . . is *only* 'the starting point and initial benchmark'" at sentencing. *United States v. Raby*, 575 F.3d 376, 381 (4th Cir. 2009) (emphasis added); *see also Booker*, 543 U.S. at 245-46 (explaining that after a proper

---

[3]Moreover, the courts of appeals have unanimously held that the retroactive application of the *Booker* remedy does not violate the Ex Post Facto Clause, because the defendants were on notice of the maximum statutory penalty when they committed their respective crimes. *See, e.g.*, *United States v. Davenport*, 445 F.3d 366, 369-70 (4th Cir. 2006) (collecting cases), *abrogated on other grounds by Irizarry v. United States*, 553 U.S. 708 (2008).

Guideline calculation, sentencing courts are "permit[ted]" to "tailor the sentence in light of other statutory concerns"); *Gall v. United States*, 552 U.S. 38, 50 n.6 (noting that courts must "consider" the Guidelines at sentencing). Moreover, sentencing courts may even completely disregard certain advice offered by the Guidelines based solely on policy grounds. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007); *United States v. Morace*, 594 F.3d 340, 349 (4th Cir. 2010).

B.

Second, the majority inappropriately gives weight to the fact that a sentencing court's failure to correctly calculate the Guideline range is reversible error. *See Ante* at 12-14. Of course, the applicable Guidelines range must be correctly calculated. But ensuring that sentencing courts correctly calculate the advisory Guidelines range simply ensures that the "advice" rendered by the Guidelines is correct. Courts must still take into account many other factors to arrive at a proper sentence for an individual defendant.

For example, Judge Wilkinson recently explained the importance of a sentencing court's consideration of matters other than the Guideline range:

> A district court must begin its sentencing determination by calculating the Guidelines range, and this typically requires the judge to make any number of factual determinations and judgment calls. *Rita [v. United States]*, 551 U.S. [338,] 351-54 [(2007)]. But that is only the beginning. A sentencing court is not bound by the Guidelines. *Id.* at 355. Rather, its sentencing decision must reflect an "individualized assessment based on the facts presented," an assessment that is entitled to "due deference" from any reviewing court. *Gall*, 552 U.S. at 51. As *Gall* explained, sentencing courts are "in a superior position to find facts and judge their import" for pur-

> poses of determining the most appropriate sentence for a given defendant since "[t]he judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." *Id.* (citation omitted).

*Dean*, slip op. at 10-11. Requiring sentencing courts to properly calculate the advisory range does not give the Guidelines the force and effect of law necessary for an ex post facto violation.

### C.

Third, the majority concludes that the Guidelines implicate the Ex Post Facto Clause, in part, because appellate courts may presume a within-Guidelines sentence to be reasonable. *Ante* at 13-14 (citing *Raby*, 575 F.3d at 381). I respectfully submit that the majority misses the point. This presumption is not due to the legal force of the Guidelines. Appellate courts are entitled to presume that a within-Guidelines sentence is reasonable *only* because a within-Guidelines sentence has already received double consideration:

> [B]y the time an appeals court is considering a within-Guidelines sentence on review, both the sentencing judge and the Sentencing Commission will have reached the same conclusion as to the proper sentence in the particular case. That double determination significantly increases the likelihood that the sentence is a reasonable one.

*Rita*, 551 U.S. at 347. *Rita* further explains that the appellate presumption, "rather than having independent legal effect, simply recognizes the real-world circumstance that when the judge's discretionary decision accords with the Commission's view of the appropriate application of § 3553(a) in the mine run of cases, it is probable that the sentence is reasonable." *Id.* at 350. Furthermore, although an appellate court may presume

a sentence is reasonable if it is within the Guideline range, a sentencing court is forbidden from doing so. *See United States v. Nelson*, 129 S. Ct. 890, 892 (2009); *Raby*, 575 F.3d at 381. The appellate court presumption, therefore, does not logically lead to the conclusion that sentencing courts are or should feel compelled to stay within the advisory Guidelines range.[4]

D.

Finally, the majority relies on Sentencing Commission statistics to show that the "practical effect" of the Guidelines is that most sentences fall within the appropriate Guideline ranges, even after *Booker*. *Ante* at 14. The majority recites the statistic that 81.9 percent of sentences imposed in the Fourth Circuit in fiscal year 2009 fell within the advisory Guideline range or a government-sponsored departure below that range. *Id.* I find these statistics unpersuasive and irrelevant.[5]

The majority does not sufficiently explain what these statistics mean or, more importantly, *why* the courts sentenced within the Guideline ranges. These statistics are not proof that courts sentenced within the Guidelines because they felt compelled to do so, feared reversal on appeal, or shied away from providing more in-depth explanation of a variant sentence.

---

[4]The majority also mentions that "the standard of review we utilize in sentencing appeals emphasizes the importance of the advisory Guidelines." *Ante* at 13. This argument is also overstated, as all sentences, "whether inside, just outside, or significantly outside the Guidelines range," are reviewed under "a deferential abuse-of-discretion standard" on appeal. *Gall*, 552 U.S. at 41.

[5]Citing statistics showing that district courts tend to sentence within the Guidelines in order to show that district courts impose particular sentences *because of* the Guidelines is a false-cause logical fallacy ("*ex post ergo propter hoc*"). The Sentencing Commission derived Guidelines ranges from, among other things, empirical study of thousands of actual sentences imposed by district courts. U.S. Sentencing Guidelines Manual ch. 1, pt. A (2009). Therefore, it is illogical to assume that district courts feel bound by the Guidelines simply because district courts happen to sentence within the Guidelines.

Indeed, such an adherence to the Guidelines would itself be reversible error. *See, e.g.*, *Raby*, 575 F.3d at 382 (reversing district court sentence because the court "seemed to feel constrained to impose a sentence within the Guidelines range").

The only permissible conclusion to be drawn from these statistics is that the district courts frequently agree with the Sentencing Commission's advice on the proper sentence for the defendants before them. As *Rita* explains,

> The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill its statutory mandate. They also reflect that different judges (and others) can differ as to how best to reconcile the disparate ends of punishment.

551 U.S. at 349. To read anything else into the statistics would be pure speculation, and speculation is not a sufficient basis for an important constitutional conclusion.

## III.

After *Booker*, the Guidelines are advisory and lack legal force. They cannot, therefore, be an ex post facto "Law." I would affirm Lewis's conviction, vacate his sentence, and remand for resentencing using the 2008 Guidelines Manual.