UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-4288

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

    v.

WHITNEY REANNE KENT,

            Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.  Thomas E. Johnston, District Judge.  (2:14-cr-00088-1)

Argued:  March 24, 2016                    Decided:  June 14, 2016

Before DIAZ and HARRIS, Circuit Judges, and John A. GIBNEY, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished opinion.  Judge Harris wrote the opinion, in which Judge Diaz and Judge Gibney joined.

**ARGUED:** Lex A. Coleman, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant.  Joshua Clarke Hanks, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.  **ON BRIEF:** Christian M. Capece, Federal Public Defender, Jonathan D. Byrne, Research & Writing Specialist, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant.  R. Booth Goodwin II, United States

Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

This case began when United States Postal Inspector Joshua Mehall briefly detained a package addressed to appellant Whitney Kent. That detention was based on characteristics that Mehall deemed suspicious, as well as a tip from Detective Justin Hackney, a canine handler for the Charleston, West Virginia Police Department. After Hackney's dog alerted to the package, Mehall obtained a search warrant, opened the package, and discovered illicit oxycodone pills.

After she was indicted, Kent moved to suppress the evidence uncovered by Mehall, challenging both the initial detention of the package and the warrant authorizing its search. Kent also sought to cross-examine Hackney, whom the government had declined to call as a witness. The district court denied Kent's suppression motions and did not require Hackney to testify. We find no error in those rulings and affirm.

**I.**

**A.**

On December 5, 2012, Inspector Mehall, working at the Charleston, West Virginia post office, detained a package addressed to Whitney Kent. Mehall detained Kent's package for the following reasons: (1) it was an Express Mail envelope with a handwritten label sent person-to-person, which Mehall found to

3

be unusual; (2) the package was not "perfectly flat," J.A. 221, suggesting that it might contain something other than paper; (3) the package was sent from New Jersey, which, according to Mehall, was a "source state[]" for drugs in West Virginia, J.A. 199; and (4) the name of the return addressee was not associated with the return address in Accurint, a database drawing from publicly available records. In addition, Detective Hackney, a Charleston Police Department canine handler who was assisting Mehall, informed Mehall that he recognized Kent's name from other drug-related investigations.

Outside of Hackney's presence, Mehall created a lineup consisting of Kent's parcel and several pre-made "blank" packages. Hackney then ran his dog, Peanut, through the lineup. Mehall observed Peanut sit in front of the package addressed to Kent and refuse to move until Hackney rewarded her. Hackney informed Mehall that Peanut had alerted to Kent's package.

Mehall applied for a warrant to open and search the package. In the affidavit in support of the warrant application, Mehall cited Peanut's alert, the characteristics of the package, and Hackney's statement about recognizing Kent's name. He also described Peanut as "a trained narcotic detection dog." J.A. 66. Mehall received the warrant, opened the package, and discovered illicit oxycodone pills.

4

Mehall arranged a controlled delivery to Kent, and Kent came to the Charleston post office to retrieve the package. After Kent signed for the package, Mehall and Hackney approached her and identified themselves. Kent admitted that the package contained oxycodone pills and stated that they were intended for her boyfriend. At that point, Hackney arrested Kent.

It is uncontested that about a month after Kent's arrest, Hackney fabricated a dog-sniff report in a separate case. The falsity of that report was discovered more than a year later, in connection with the prosecution to which it was related.

**B.**

Kent was indicted in the Southern District of West Virginia for knowingly and intentionally possessing with intent to distribute oxycodone, in violation of 21 U.S.C. § 841(a)(1). She filed two motions to suppress the parcel and its contents. In one, she challenged the initial detention of the package, arguing that it violated the Fourth Amendment because it was not supported by the requisite reasonable suspicion. In the other, she challenged the search warrant itself, questioning the veracity of the affidavit Mehall submitted in support of his warrant application.

With respect to Mehall's affidavit, Kent argued, first, that the assertion that Peanut was "a trained narcotic detection dog" was made with "reckless disregard for the truth." J.A. 36

5

(emphasis omitted); see Franks v. Delaware, 438 U.S. 154, 156, 171 (1978) (defendant challenging warrant affidavit must show that it contains a "deliberate falsehood" or a statement made with "reckless disregard for the truth" that is "necessary to the finding of probable cause"). According to Kent, though Peanut was trained and certified for narcotics detection, she had not been trained to alert to oxycodone pills specifically, and Hackney knew that when the search warrant was obtained. Second, Kent argued that Hackney's lack of credibility undermined the reliability of his statements to Mehall, including his report — transmitted by Mehall in his affidavit — that Peanut had alerted to the package.

The district court held a hearing on Kent's suppression motions on January 6, 2015. The government called Mehall, but not Hackney, as a witness. Kent called numerous witnesses, including the president and the records custodian of the organization that certified Hackney to handle Peanut, an expert in canine training and supervision, a pharmacology expert, and the original owner and trainer of Peanut. Through this testimony, Kent attempted to cast doubt on the quality of Peanut's training and the integrity of the package lineup, ostensibly to show that a false statement had been included in the warrant affidavit. She also argued that she should be

permitted to question Hackney, because his credibility was central to her case.

The district court acknowledged that Hackney's credibility might be questionable, but it expressed doubt that those credibility issues — discovered only after the events in question — were relevant to this case. The court took Kent's request to question Hackney, the Franks issue, and the other matters addressed in the hearing under advisement.

On January 30, 2015, the district court denied Kent's motions to suppress. The court found that Mehall had reasonable suspicion to detain the package and conduct the dog sniff based on his observations about the physical characteristics of the package and the return address mismatch. The court further noted that Hackney's statement about recognizing Kent's name lent support to Mehall's decision, but it found that Mehall had reasonable suspicion to detain the package even without Hackney's comment.

The court also concluded that Kent had not made the showing that, under Franks, would entitle her to an evidentiary hearing on the veracity of Mehall's affidavit. See 438 U.S. at 156. With respect to the affidavit's assertion that Peanut was a "trained narcotic detection dog," the court found no material falsity, and rejected Kent's argument as suffering from "hindsight bias," J.A. 523: Mehall and Hackney sought a warrant

7

for contraband in general, not for oxycodone pills in particular, so whether Peanut was trained to detect oxycodone was not relevant to the probable cause determination. As to Hackney's credibility regarding Peanut's alert, the court held that Mehall "could have been neither deliberate nor reckless" in relaying Hackney's report of an alert, given that Hackney's false dog-sniff report was not uncovered until after the events in question. J.A. 524. The court never required Hackney to testify, although it did not separately deny Kent's request nor address a supplemental memorandum Kent had filed on the matter.

A few days after the district court denied her motions, Kent pleaded guilty to the indictment. She was sentenced to five years of probation, with the first six months to be served on home confinement. Kent's plea was conditional, however, and she reserved the right to appeal the order denying her motions to suppress. This timely appeal followed.

## II.

We review the district court's findings of fact on a motion to suppress for clear error and its legal conclusions de novo. United States v. Lewis, 606 F.3d 193, 197 (4th Cir. 2010). "In so doing, we must construe the evidence in the light most favorable to the prevailing party, and give due weight to inferences drawn from those facts by resident judges and law

8

enforcement officers." <u>Id.</u> (citations and internal quotation marks omitted). We review the district court's conclusions as to the relevance of evidence for an abuse of discretion. <u>United States v. Parker</u>, 262 F.3d 415, 420 (4th Cir. 2001).

**A.**

The Fourth Amendment's protection against unreasonable searches and seizures extends to letters and sealed packages, which are part of "the general class of effects in which the public at large has a legitimate expectation of privacy." <u>United States v. Jacobsen</u>, 466 U.S. 109, 114 (1984). A package may be detained briefly for investigative purposes, but only if there is reasonable suspicion that it contains contraband. <u>See</u> <u>United States v. Van Leeuwen</u>, 397 U.S. 249, 252–53 (1970); <u>cf.</u> <u>United States v. Place</u>, 462 U.S. 696, 706 (1983) (detention of luggage). As with the detention of an individual, reasonable suspicion in this context requires a "particularized and objective basis for suspecting legal wrongdoing" under "the totality of the circumstances." <u>See</u> <u>United States v. Arvizu</u>, 534 U.S. 266, 273 (2002) (citation and internal quotation marks omitted) (detention of "persons or vehicles"); <u>see also</u> <u>United States v. Gomez</u>, 312 F.3d 920, 924 (8th Cir. 2002) (detention of mail); <u>United States v. Gill</u>, 280 F.3d 923, 928 (9th Cir. 2002) (same).

9

Here, Mehall's first-hand observations, in conjunction with Hackney's statement that he recognized Kent's name from other drug-related investigations, supplied the reasonable suspicion necessary to detain the package. As the district court explained, by virtue of his training and experience, Mehall was able to "flag" certain characteristics of Kent's package as unusual or otherwise consistent with the presence of drugs: the package was sent by Express Mail individual-to-individual, rather than business-to-business, as is more often the case; it had a handwritten label, rather than the more common typed label; the name of the return addressee was not associated with the return address in the Accurint database; it originated from New Jersey, one of "six to eight known source states for drugs arriving in West Virginia"; and the package's size would accommodate "more than just paper." J.A. 515. And while it surely is true, as Kent contends, that none of that is inconsistent with innocent activity, it also is true that even innocent factors, taken together, may add up to reasonable suspicion. See United States v. Digiovanni, 650 F.3d 498, 511 (4th Cir. 2011) (citing United States v. Sokolow, 490 U.S. 1, 9 (1989)).

We need not decide whether Mehall's observations alone would give rise to reasonable suspicion, as the district court concluded, because here we also have another factor: Hackney's

10

statement to Mehall that he recognized Kent's name from prior drug-related investigations. While this statement alone may have been insufficient to furnish reasonable suspicion, it provided an additional and particularized detail about Kent's package that, under the totality of the circumstances, justified Mehall's decision to detain the package for a brief investigation. Cf. United States v. Lakoskey, 462 F.3d 965, 969–70, 976 (8th Cir. 2006) (finding reasonable suspicion to detain Express Mail package with handwritten label sent from drug source state where return addressee's name was fictitious and the inspector had received a tip to watch for drug shipments to defendant).[1] Accordingly, we affirm the district court's denial of Kent's motion to suppress for lack of reasonable suspicion.

## B.

Kent's second claim is that the warrant for the ultimate search of her package was issued without the requisite probable

---

[1] In determining whether reasonable suspicion existed, we consider the "facts within [Mehall's] knowledge" when the package was detained. See United States v. Powell, 666 F.3d 180, 186 (4th Cir. 2011) ("The reasonable suspicion standard is an objective one, so we examine the facts within the knowledge of [the officer] to determine the presence or nonexistence of reasonable suspicion." (citation and internal quotation marks omitted)). At that time, Mehall had no reason to doubt Hackney's credibility, and Hackney's statement therefore supported Mehall's objectively reasonable suspicion.

11

cause. Kent does not contest that on its face, the affidavit submitted with the warrant application — relying on Peanut's alert to the package, as well as Mehall's observations of the package and Hackney's recognition of Kent's name — supported a probable cause finding. Instead, Kent challenges the veracity of Mehall's affidavit, claiming that it includes deliberately or recklessly falsified information material to the probable cause determination.

In Franks v. Delaware, the Supreme Court set out the limited circumstances under which a defendant may contest the presumptive validity of a search-warrant affidavit. 438 U.S. at 155-56. Under Franks, a defendant is entitled to a hearing into the truth of a warrant affidavit only if she makes a "substantial preliminary showing," id. at 155, that "(1) the warrant affidavit contained a deliberate falsehood or statement made with reckless disregard for the truth and (2) without the allegedly false statement, the warrant affidavit is not sufficient to support a finding of probable cause." United States v. Fisher, 711 F.3d 460, 468 (4th Cir. 2013) (citation and internal quotation marks omitted). That "substantial preliminary showing" is to be made by way of "[a]ffidavits or sworn or otherwise reliable statements" submitted by the defendant as an "offer of proof"; conclusory allegations of falsity or the "mere desire to cross-examine" a police officer

12

are not enough. Franks, 438 U.S. at 171. And unless a defendant first meets her burden under both the falsity and the materiality prongs of Franks, she is not entitled to an evidentiary hearing at which to explore the veracity of a warrant affidavit. Id. at 171-72; see also United States v. Tate, 524 F.3d 449, 454 (4th Cir. 2008) (describing defendant's burden as a "heavy one to bear").

We agree with the district court that Kent did not make the threshold showing that would entitle her to a Franks hearing. First, the evidence of Peanut's training and certification to detect marijuana, cocaine, heroin, and methamphetamine — evidence that Kent herself introduced before the district court — is enough to show that the affidavit's description of Peanut as a "trained narcotic detection dog" was not deliberately or recklessly false. And even if, as Kent contends, Peanut was not trained to detect oxycodone pills in particular, omission of that information was not material to the magistrate's probable cause determination, as required under Franks. As the district court explained, Mehall's affidavit asserted probable cause to search for controlled substances generally, not oxycodone specifically, and Peanut's alert to the package was enough to establish probable cause that some controlled substance was inside. See United States v. Robinson, 707 F.2d 811, 815 (4th Cir. 1983) (alert by dog trained to

13

detect marijuana, cocaine, and heroin establishes probable cause and "the fact that a different controlled substance was actually discovered does not vitiate the legality of the search"). Whatever the perspective from hindsight, at the time the warrant issued, a clarification that Peanut's training did not include oxycodone would have been immaterial to the magistrate's probable cause determination.

As to the second challenged assertion in the affidavit — that Peanut alerted to Kent's package — Kent cannot make the requisite "substantial preliminary showing" of falsity. See Franks, 438 U.S. at 155. For the falsity of Mehall's account of an alert, Kent relies exclusively on questions about the credibility of Hackney, who made the official determination that Peanut had alerted and transmitted that determination to Mehall for use in the affidavit. But although Mehall acknowledged that only Hackney was qualified to pronounce a dog alert, he also testified that he was familiar with Peanut's behavior in lineups, having "seen Peanut run a parcel line-up numerous times," and that on this particular occasion, the dog "stopped at the subject package and would not move off of it until [Hackney] rewarded her." J.A. 202. Mehall's independent observations thus corroborated Hackney's report, and Kent has

14

done nothing to put at issue the credibility of Mehall, as opposed to Hackney.[2]

On appeal, rather than contesting these points directly, Kent argues primarily that the district court abused its discretion by not requiring Hackney to testify before denying her a Franks hearing. Only by calling Hackney as a witness and impeaching his credibility, Kent contends, could she effectively challenge the veracity of Mehall's affidavit. But this puts the cart before the horse: Only after making the "substantial preliminary showing" of falsity and materiality outlined by

___

[2] The government argues, and the district court appeared to agree, that Kent would not be entitled to a Franks hearing even if she could make a substantial preliminary showing that Hackney intentionally fabricated Peanut's alert, so long as Mehall, the affiant, did not know or have reason to know that he was transmitting false information to the magistrate. We do not endorse that position. The Supreme Court in Franks described itself as having adopted the "premise that police could not insulate one officer's deliberate misstatement merely by relaying it through an officer-affiant personally ignorant of its falsity." See 438 U.S. at 163 n.6 (discussing Rugendorf v. United States, 376 U.S. 528 (1964)). And courts have relied on that premise to hold that a defendant may be entitled to relief under Franks if an officer deliberately or recklessly causes a falsehood to appear in an affidavit, even if the affiant him or herself is not at fault. E.g., United States v. Shields, 458 F.3d 269, 276 (3rd Cir. 2006) ("[I]t is beyond question that the police cannot insulate a deliberate falsehood from a Franks inquiry simply by laundering the falsehood through an unwitting affiant who is ignorant of the falsehood."); United States v. Brown, 298 F.3d 392, 408 (5th Cir. 2002) ("[A] defendant is entitled to a Franks hearing upon making a substantial preliminary showing that a government official deliberately or recklessly caused facts that preclude a finding of probable cause to be omitted from a warrant affidavit, even if the governmental official at fault is not the affiant.").

15

<u>Franks</u> would Kent have been entitled to an evidentiary hearing at which she could call and cross-examine Hackney about his veracity. See <u>Franks</u>, 438 U.S. at 158–60 (discussing defendant's request to call police officer as witness to challenge veracity); <u>id.</u> at 171–72 (preliminary <u>Franks</u> showing must be made before defendant is entitled to a hearing). In any event, whether or not Hackney's statements could be trusted, there was sufficient independent evidence to corroborate both the nature of Peanut's training and the existence of an alert to Kent's package. To the extent that Kent's request to compel Hackney's testimony may be understood as something separate and apart from her underlying request for a <u>Franks</u> hearing, the district court did not abuse its discretion in denying it.[3]

## III.

Like the district court, we recognize that Kent has identified a serious concern about Hackney's credibility, which may have significant ramifications in other cases. But the district court did not err in holding that in this case, Kent could not make a substantial showing that Mehall's affidavit

---

[3] The government contends that Kent is barred from a separate challenge to the denial of her request for Hackney's testimony because her plea agreement preserved only her right to appeal the denial of her motions to suppress. For purposes of this appeal, we assume without deciding that Kent's conditional plea did not foreclose her claim regarding Hackney's testimony.

16

included knowingly or recklessly false information material to the probable cause determination. Nor did the court err in concluding that Mehall possessed reasonable suspicion to detain Kent's package in the first place. Accordingly, we affirm the judgment of the district court.

AFFIRMED